Louis Martiniello & another *vs.* Ernest P. Robitaille & another.

Middlesex.    February 5, 1935. — January 27, 1936.

Present: Rugg, C.J., Pierce, Field, Donahue, & Qua, JJ.

*Judgment. Surety. Fraud. Bond,* To dissolve attachment. *Contract,* What constitutes, Consideration. *Practice, Civil,* Amendment.

In an action against the surety on a breached bond to dissolve an attachment, evidence that judgment in the original action had been obtained by default for an amount probably excessive after negotiations, not resulting in a binding contract, between the plaintiff and the principal for the entry of judgment for a smaller and apparently proper amount, and that the negotiations were not disclosed to the surety, would not warrant a finding that the judgment had been obtained either by collusion between the plaintiff and the principal or by fraud of the plaintiff.

A defendant's allowing judgment to be entered by default and proof of damages by the plaintiff was neither acceptance of nor consideration

for the plaintiff's previous promise not to "bother" the defendant and to forbear for a time suit against the surety on a bond to dissolve an attachment if the defendant would "give" the plaintiff judgment for a smaller amount; and there was no consideration for the plaintiff's promise for the further reason that the defendant had no defence, nor belief that he had a defence, to a judgment for such smaller amount.
Under G. L. (Ter. Ed.) c. 231, § 125, this court denied a defendant's motion to amend his answer by setting up a defence not supported by the evidence at the trial.

CONTRACT. Writ in the First District Court of Eastern Middlesex dated December 15, 1933.

Upon removal to the Superior Court, the action was tried before *Morton*, J., who ordered a verdict for the plaintiffs. The defendants alleged exceptions.

*G. Alpert*, (*A. L. Brown* with him,) for the defendant Robitaille.

*J. C. Johnston*, (*H. H. Rudofsky* with him,) for the plaintiffs.

FIELD, J. This is an action of contract, brought against sureties on a bond given to dissolve an attachment in a prior action, to recover the penal sum of the bond. The defendants in their answers allege that the "plaintiffs secured their judgment in the original action through fraud and collusion with the principals named in the bond" — the defendants in the original action. A verdict for the plaintiffs in the penal sum of the bond was directed and the defendants excepted.

These facts were admitted: On August 1, 1929, an action was begun by the plaintiffs in the present action (Louis Martiniello and Michael E. Martiniello) against three defendants, Leo B. Greene, James D. Greene and George J. Greene. Attachments were made and were dissolved upon the filing of a bond in the sum of $8,000 by these three defendants as principals and the defendants in the present action, Ernest P. Robitaille and Sophy Shactman, as sureties. In the original action the plaintiffs recovered a judgment by default against the defendants therein and execution issued thereon November 14, 1933, in the sum of $8,479.71 damages and $39.40 costs. The plaintiffs made demand upon the defendants in the original action — principals on the

bond — for payment of the execution. Thirty days elapsed from the date of the execution and the judgment remained unsatisfied either in whole or in part. (The bond, which was in statutory form [G. L. (Ter. Ed.) c. 223, § 120], was conditioned to pay the plaintiffs the amount, if any, recovered by them "within thirty days after the final judgment in said action.") Thereafter the plaintiffs, on December 15, 1933, brought this action against the sureties to recover the penal sum of the bond.

On the admitted facts a final judgment was entered against the principals on the bond in the action in which the bond was given, for an amount in excess of the penal sum of the bond, and payment was not made by the principals within thirty days after such judgment was entered. Therefore, apart from affirmative defences, hereinafter considered, the liability of the sureties had matured before this action was brought against them and the plaintiffs were entitled to the directed verdict. *Jennings* v. *Wall*, 217 Mass. 278, 284. The defendants contend, however, that on the evidence facts could have been found showing (a) that the judgment was not conclusive as to them or (b) that they were released from liability on the bond. The direction of the verdict was not erroneous on either of these grounds.

First. The judgment in the original action against the principals on the bond, though obtained by default, being "the final judgment in said action" (*Tapley* v. *Goodsell*, 122 Mass. 176, 182, see *Treasurer & Receiver General* v. *Macdale Warehouse Co.* 262 Mass. 588, 594) and having been entered in the lawful exercise of the power of the court (*Salvin* v. *Sidman*, 230 Mass. 278, 279), was conclusive on the sureties, by reason of their contract with the plaintiffs, as to the debt ascertained by said judgment and required a verdict for the plaintiffs in this action, unless such judgment was procured by collusion between the plaintiffs and the principals or by other fraud upon the sureties. In the absence of such collusion or other fraud, defences which could have been made by the principals in the original action cannot be made by the sureties in the present action, but only defences personal to the sureties. *Giatas* v. *Demoulos*, 271 Mass. 51, 53–54,

and cases cited. The defendants, however, do not rely on any defence personal to them which is pleaded. The burden of proving that the judgment was procured by collusion or other fraud was on the sureties. See *Cutter* v. *Evans*, 115 Mass. 27, 30; *Fall River* v. *Riley*, 140 Mass. 488, 489. And to impeach the judgment they were required to prove also that it was improper either because the principals were not indebted to the plaintiffs or because the amount for which the judgment was entered was grossly exaggerated for the purpose of defrauding the sureties. *Dickerman* v. *Northern Trust Co.* 176 U. S. 181, 192. Freeman on Judgments (5th ed.), § 465. See also *White* v. *Crow*, 110 U. S. 183, 187.

The defendants rely on the following evidence to impeach the judgment in the original action. One of the principals on the bond testified as follows: Prior to the entry of judgment he had a conversation with one of the plaintiffs. This plaintiff said that if the witness would "give him judgment in the amount of $4,000 . . . he wouldn't bring suit for two years against the sureties," that he "wouldn't bother" the witness or his brothers, "he would absolutely leave . . . [them] out, he knew . . . [they] didn't have any money and he didn't want to go to court to fight the case." This witness, in consequence of this conversation, did not appear in court and the case was defaulted. At the time of the conversation "they went over the figures on the job in trying to determine what was due Martiniello and finally arrived at the conclusion that there was a net balance due Martiniello of $4,044." Counsel for one of the present defendants, representing the witness and his brothers, filed a petition to vacate the judgment. Such counsel talked with the witness about obtaining a bond to vacate the judgment, but the witness made no attempt to obtain such a bond. The witness knew that counsel was filing the petition but did not at any time give him "all the information and did not tell him about the agreement between himself and Martiniello." This witness gave as a reason for not telling counsel about the agreement that "Martiniello and I agreed he wouldn't bring suit for two years. I honestly believed I could satisfy his judgment

within the two years, I could take care of it myself." And the witness testified that "he deliberately withheld the information that the agreement had been made."

The evidence in its aspect most favorable to the defendants was insufficient as matter of law to impeach the judgment in the original action. The mere failure of the principals to make a defence to the original action was insufficient for this purpose. *Tracy* v. *Maloney*, 105 Mass. 90. *Salvin* v. *Sidman*, 230 Mass. 278, 279. And there was no evidence that the judgment entered was improper on the ground that the principals on the bond were not indebted to the plaintiffs. The evidence was to the contrary. The judgment was improper, if at all, on the ground that it was grossly excessive in amount, as the evidence tends to show.

1. The evidence, in the opinion of a majority of the court, did not warrant a finding that the excessive amount of the judgment was the result of collusion between the plaintiffs and the principals.

It does not appear that the plaintiffs and the principals agreed that a judgment excessive in amount should be entered, or that the principals either received any consideration for permitting the entry of a judgment excessive in amount or participated with the plaintiffs in obtaining such a judgment beyond failing to appear in court to make a defence thereto. The negotiations between the plaintiffs and the principals for the entry of a judgment by default, so far as the evidence discloses, were directed solely to the entry of a proper judgment which could not have been impeached by proof of collusion or fraud, whatever would have been the effect of the proposed agreement, if made, on the liability of the sureties for the amount of such judgment. Such negotiations, even if they had culminated in an agreement for the entry of a proper judgment, would not show that the excessive judgment was obtained by collusion. And no collusion of the principals with the plaintiffs is shown by the evidence in relation to the petition to vacate the judgment.

2. The evidence, in the opinion of a majority of the

court, did not warrant a finding that the excessive judgment was obtained by fraud of the plaintiffs.

The evidence did not go far enough to show that a binding agreement for the entry of a judgment by default in any amount was ever made. According to the testimony the promises offered by the plaintiffs to the principals not to "bother" them and not to bring suit against the sureties for two years were to be exchanged for the principals' giving a proper judgment in the amount of $4,000. There was no evidence, however, that the principals gave the plaintiffs such a judgment. So far as the evidence discloses, the principals merely did not appear in court and left the plaintiffs to establish their damages by proof after default. See G. L. (Ter. Ed.) c. 231, § 57; c. 235, § 5. Rule 78 of the Superior Court (1932). Such conduct on the part of the principals, though in reliance on previous negotiations with the plaintiffs, not being in compliance with the terms of the plaintiffs' offer, was not an acceptance thereof. Forbearance of the principals to set up a defence was not in accordance with the plaintiffs' request (see Williston, Contracts, § 136) and, consequently, was neither acceptance of the plaintiffs' offer nor consideration for the plaintiffs' promises. *Manter* v. *Churchill*, 127 Mass. 31. *Barber* v. *Rathvon*, 250 Mass. 479, 484–485. And for the further reason that the evidence does not show that the principals had any valid defence to a judgment in the amount of $4,000 or an honest and reasonable belief in the possible validity of any such defence, the evidence failed to show consideration for the plaintiffs' promises. See *Blount* v. *Wheeler*, 199 Mass. 330, 336; *Attorney General* v. *American Legion of Honor*, 206 Mass. 193, 195; Am. Law Inst. Restatement: Contracts, § 76 (b).

The evidence of negotiations for the entry of a proper judgment between the plaintiffs and the principals which did not culminate in an agreement did not warrant a finding that the excessive judgment was obtained as the result of any false representations by the plaintiffs of their intentions with respect to the amount of the judgment to be obtained or with respect to their bringing suit against the sureties within two years, on which the principals were entitled to

rely when they failed to appear in court. Whether such inferences could have been drawn if the agreement had been made need not be decided. Nor need it be decided whether if the judgment had been obtained by the plaintiffs in fraud of the principals it could be attacked by the sureties in this action. And whether, so far as fraud of the plaintiffs is concerned, the direction of a verdict for them could have been sustained also on the ground that fraud is not sufficiently alleged need not be decided. *Cosmopolitan Trust Co.* v. *S. L. Agoos Tanning Co.* 245 Mass. 69, 73. *Simpson* v. *Eastern Massachusetts Street Railway*, 292 Mass. 562, 565.

Second. The defendants contend that even if the judgment cannot be impeached for collusion or fraud they were released from liability thereon by an agreement between the plaintiffs and the principals to extend the time of payment of the judgment. This is a defence personal to the sureties, and was not adjudicated by the judgment. *Giatas* v. *Demoulos*, 271 Mass. 51. But this defence is not pleaded. The defendants, however, request this court to permit them to amend their answers by setting up this defence (see G. L. [Ter. Ed.] c. 231, §§ 51, 125), though no such amendment is presented for allowance and no reasons for allowing an amendment at this stage of the proceedings are shown by affidavit or otherwise, apart from the bill of exceptions. Without discussing other considerations bearing upon this matter, it is enough to say that such an amendment would be nugatory on the evidence set forth in the bill of exceptions and for that reason cannot be allowed. *Barbour* v. *Sampson*, 266 Mass. 180, 183. The evidence already discussed does not show an enforceable contract between the plaintiffs and the principals for extension of time and, consequently, would not warrant a finding that the sureties were released from liability on the bond. *Maglione* v. *Penta*, 266 Mass. 413, 417.

*Exceptions overruled.*