R & L LUMBER CO., d.b.a. JOHNSON CASHWAY LUMBER CO. v. SUMMIT FIDELITY & SURETY COMPANY.

170 N. W. (2d) 594.

September 12, 1969—No. 41407.

*Thuet, Todd, Anderson & Collins* and *John J. Todd,* for appellant.

*Sydney Berde,* for respondent.

Heard before Knutson, C. J., and Rogosheske, Sheran, Peterson, and Frank T. Gallagher, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order denying a motion by a creditor for summary judgment against its insolvent debtor's surety, based on a default judgment against the debtor, and granting the surety's countermotions to vacate the default judgment, to intervene in the reopened action, and to assert the debtor's counterclaim as an equitable setoff.

Plaintiff, R & L Lumber Co., doing business as Johnson Cashway Lumber Co., supplied building materials to Lynbrook Construction Co., which built and sold a large number of homes in suburban Hennepin County. On September 20, 1963, plaintiff filed a mechanics lien against the lands and premises of Lynbrook, alleging that $23,677.37 was due and owing to plaintiff for building materials furnished to Lynbrook. On July 2, 1964, plaintiff commenced an action to foreclose this lien. Lynbrook answered and counterclaimed for damages totaling $261,285, of which $26,200 resulted from a claimed failure of plaintiff to deliver materials of the kind and quality and at the time speci-

fied in its contract with plaintiff. The remaining $235,085 represented loss of profits on homes not sold or sales canceled because of Lynbrook's failure to meet its construction and delivery schedules due to the withdrawal of F. H. A. financing from its entire Brooklyn Park project, allegedly as the result of plaintiff's breach of contract. Plaintiff replied, denying the allegations of the counterclaim, and sought $100,000 actual and punitive damages allegedly caused by Lynbrook's malicious garnishment, ancillary to its counterclaim, of plaintiff's funds in various financial institutions and due from customers.

In order to enable Lynbrook to sell homes free of plaintiff's lien during the pendency of the litigation between them, plaintiff and Lynbrook, on February 9, 1966, entered into and filed a stipulation agreeing that upon Lynbrook's filing of a surety bond for $27,500 the court should issue an order pursuant to Minn. St. 514.10 discharging the lis pendens and the mechanics lien filed against Lynbrook's property "and substituting the bond in place thereof." [1] On the same day, the bond of defendant, Summit Fidelity & Surety Company, which provided that defendant would be liable for a sum not exceeding $27,500 if Lynbrook failed to pay "any judgment * * * rendered in the above-entitled action," was filed, and the court ordered that the bond be "substituted in lieu" of the mechanics lien without prejudice to plaintiff "in any respect by the substitution of said surety bond for said mechanics lien," and that the lis pendens and the mechanics lien be discharged.

On August 16, 1966, a petition for involuntary bankruptcy was filed in the United States District Court for the Northern District of Illinois against Lynbrook, its successors and assigns, and its parent company. The Federal court enjoined and stayed all

---

[1] The substitution of a bond for plaintiff's mechanics lien does not, as defendant contends, convert plaintiff's foreclosure action into a simple contract action. Minn. St. 514.10 provides in part: "The lien claimant shall have the same right of lien against such money deposit that he had against the property released."

suits against Lynbrook until the entry of a final decree in the bankruptcy proceedings. Shortly thereafter, however, the Federal court modified its order to permit the continued prosecution of previously commenced suits by Lynbrook's creditors.

Plaintiff then served interrogatories on the attorney who had been authorized by the referee in bankruptcy to represent Lynbrook in this action. Lynbrook failed to answer these interrogatories. After waiting 9 months for the answers, plaintiff moved for a summary judgment on its claim and for dismissal with prejudice of the defendant's counterclaim, based solely upon the ground of Lynbrook's failure to answer the interrogatories. Rule 37.04, Rules of Civil Procedure. On September 15, 1967, a hearing was held on this motion. Lynbrook's attorney appeared but was unable to proceed because he had found it impossible to get the information from Lynbrook necessary to answer the interrogatories and to try the action. Defendant had no notice of this hearing and did not appear. On September 18, 1967, the court made findings and ordered that judgment be entered for plaintiff on its mechanics lien claim,[2] and, upon plaintiff's insistence, that Lynbrook's counterclaim be dismissed with prejudice. On September 21, plaintiff notified defendant of the entry of this judgment and demanded payment of it pursuant to the bond. After some correspondence between the parties relative to plaintiff's failure to notify defendant of the motion for summary judgment, plaintiff moved the court for an order directing the state commissioner of insurance to impound assets owned by defendant within the state pending payment of the judgment. After a hearing, the trial court denied this motion and held that in order to recover plaintiff had to bring a separate

---

[2] On September 20, judgment was entered in the amount of $26,831.44. The amount due plaintiff from Lynbrook on that date had been reduced by partial payment to $17,075.64. Also included in the trial court's award were $4,221.80 in interest, $2,500 in attorney's fees, and $3,034 in costs, the latter including a $3,000 premium on a bond filed by plaintiff to release the garnishment of its funds.

action against defendant on the bond so that defendant would be able to assert any defenses which it had.

On December 26, 1967, plaintiff commenced this action on the bond and moved for summary judgment based on its complaint and the judgment obtained against Lynbrook. On January 8 and January 18, 1968, defendant served countermotions to dismiss the complaint, to open the default judgment against Lynbrook, and to permit defendant to intervene in that reopened action, defend it on the merits, and assert Lynbrook's counterclaim as an equitable setoff.

On April 17, 1968, after a hearing, the district court denied plaintiff's motion for summary judgment in this action and granted defendant's countermotions, ordering the default judgment against Lynbrook vacated and permitting defendant to intervene as a party defendant in the reopened action and to assert all defenses and counterclaims which Lynbrook had in that action. Plaintiff appeals, alleging that the district court erred in failing to grant its motion and in granting the defendant's countermotions.

Under Rule 60.02, Rules of Civil Procedure, the trial court has broad discretion to open a default judgment, and this discretion should be liberally exercised. Vrooman Floor Covering Inc. v. Dorsey, 267 Minn. 318, 126 N. W. (2d) 377; Sommers v. Thomas, 251 Minn. 461, 88 N. W. (2d) 191. On appeal, we will not reverse an order vacating a default judgment unless it amounts to an abuse of discretion. Sommers v. Thomas, *supra;* Standard Oil Co. v. King, 238 Minn. 81, 55 N. W. (2d) 710; Peterson v. W. Davis & Sons, 216 Minn. 60, 11 N. W. (2d) 800. Plaintiff contends in effect that the court's order in this case did amount to an abuse of discretion in that the court failed to recognize that under Pioneer Sav. & Loan Co. v. Bartsch, 51 Minn. 474, 53 N. W. 764, as it has been interpreted, defendant was obligated as a matter of law, under the express language of its surety agreement, to pay any judgment rendered against Lynbrook upon Lynbrook's failure to pay, even though it had not been

given notice of plaintiff's motion for summary judgment or an opportunity to defend.

The trial court found that since plaintiff knew that defendant was surety on Lynbrook's bond, and since Lynbrook was insolvent, plaintiff should have given defendant notice of its motion for summary judgment in its action against Lynbrook to permit defendant to intervene and defend on the merits. Apparently, the trial court, in effect, construed the bond filed pursuant to Minn. St. 514.10 as a mere general contract of indemnity and not as an undertaking on defendant's part to be bound by the result of the foreclosure action brought against Lynbrook by plaintiff. Cf. Avery v. Campbell, 279 Minn. 383, 157 N. W. (2d) 42.

It is clear, however, that where a surety has undertaken to pay "any judgment rendered" in an action, the surety has neither a right to notice of such an action or a right to reopen a judgment entered against its principal, even though it was obtained by consent or default. See, e. g., Sargeant v. Starr, 102 Ga. App. 453, 459, 116 S. E. (2d) 633, 637; Travelers Ind. Co. v. Nationwide Const. Corp. 244 Md. 401, 412, 224 A. (2d) 285, 291. This procedural rule is based upon the general rule first announced by dicta in Pioneer Sav. & Loan Co. v. Bartsch, *supra*, and subsequently accepted and applied in most jurisdictions. The rule is that where a surety has expressly or by implication undertaken to be reponsible for the result of a suit between others, to which it is not a party and to which it has not been made a party by notice and the opportunity to defend, the judgment against the principal alone is conclusive evidence against the surety of every fact which it was necessary to find to recover such a judgment. See, Gescheidler v. National Cas. Co. 120 Ind. App. 673, 681, 96 N. E. (2d) 123, 126; Martiniello v. Robitaille, 293 Mass. 200, 202, 199 N. E. 534, 535; Monmouth Lbr. Co. v. Indemnity Ins. Co. of N. America, 21 N. J. 439, 446, 122 A. (2d) 604, 608, 59 A. L. R. (2d) 742. The basic purpose of this rule is to require a surety who has agreed to pay any judgment entered against his principal

to pay such a judgment upon the failure of the principal to do so, without requiring the creditor to undergo the delay and expense of relitigating his entire claim on the merits. If this were not the rule, creditors would be unwilling to accept a bond in lieu of an attachment lien, thereby unnecessarily tying up the title to all of the property attached pending the outcome of the action.

The provisions of any bond are a matter of contract between the parties. Pioneer Sav. & Loan Co. v. Bartsch, *supra*. Defendant expressly agreed to pay "any judgment rendered" against Lynbrook in this action which Lynbrook failed to pay. Defendant chose this language itself. We can find no justification for not construing it as unconditionally requiring defendant to pay this judgment. If defendant intended its undertaking to mean something less, it should have expressly so stated. Having failed to do so, defendant should not be allowed to escape its obligation at the expense of a creditor who in reliance on defendant's agreement released its mechanics lien on Lynbrook's property.

This rule is not unfair to the surety. Assuming a surety pays a judgment pursuant to its bond under a contract to pay any judgment upon default by its principal, it is subrogated to whatever rights the judgment creditor had against its principal. Carr Hdwe. Co. v. Chicago Bonding & Surety Co. 190 Iowa 1320, 181 N. W. 680; Western Cas. & Surety Co. v. Meyer, 301 Ky. 487, 192 S. W. (2d) 388, 164 A. L. R. 769. See, Anchor Cas. Co. v. Bird Island Produce, Inc. 249 Minn. 137, 82 N. W. (2d) 48; Hartford Acc. & Ind. Co. v. Dahl, 202 Minn. 410, 278 N. W. 591. Consequently, the surety, upon payment of the judgment, may seek reimbursement from its principal. It is only equitable that the surety which has contracted to pay any judgment, rather than the judgment creditor who relied on the bond, should be burdened with the expense and risk of such an action.

To protect itself against an insolvent principal, a surety can and usually does require the principal to post collateral up to the full amount of the bond. In this case, defendant took Lynbrook's stock as collateral. Obviously this was not a prudent choice in

view of the fact that Lynbrook is now insolvent and the stock is quite likely worthless. It is not because of any act of plaintiff that defendant is not fully protected and finds itself in no better position than a general creditor of Lynbrook on its subrogation claim. Had defendant required Lynbrook to post sufficient collateral, its effort to intervene in Lynbrook's dispute with plaintiff would have been unnecessary.

We find nothing in the facts of this case which persuades us that it would be unjust to apply the general rule, and we are therefore compelled to hold that the summary judgment entered against Lynbrook was binding upon defendant, absent fraud or collusion, and that the trial court erred in vacating this judgment. If, as defendant hints in its brief, there was any fraud on the part of plaintiff or any collusion between plaintiff and Lynbrook, defendant has an opportunity to establish those facts during the trial of plaintiff's action on the bond. If fraud or collusion is found, defendant will be relieved of its contractual obligation to pay the judgment entered against Lynbrook.

We agree, however, that the trial court was clearly correct in vacating the order dismissing Lynbrook's counterclaim with prejudice. The only apparent reason for that order was Lynbrook's failure to answer plaintiff's interrogatories. This is insufficient to justify a dismissal of Lynbrook's counterclaim with prejudice under Rule 37.04, Rules of Civil Procedure, which provides that a court may dismiss a party's claim upon a willful failure to answer interrogatories. The only reason that plaintiff's interrogatories were not answered in this case was that the attorney representing the interests of Lynbrook's creditors was unable to get the necessary information from the insolvent corporation. Answering by disclosing lack of knowledge would have been a meaningless formality. The failure to go through such a formality cannot be termed a willful violation of a party's duty to answer interrogatories. Garrity v. Kemper Motor Sales, 280 Minn. 202, 159 N. W. (2d) 103. In addition, it would be grossly unfair to deprive Lynbrook's other creditors of the possible

benefits of $261,285 on this ground. Accordingly, we affirm the trial court's order reinstating Lynbrook's counterclaim, although whether this counterclaim can or should now be prosecuted is within the discretion of the bankruptcy court.

Plaintiff is entitled to recover its damages and all reasonable attorneys' fees,[3] costs, and disbursements incurred in its foreclosure action. The court's award of $3,034 in costs, however, included a $3,000 premium on a bond filed by plaintiff to secure the release of a garnishment of its funds obtained by Lynbrook pursuant to its counterclaim. That $3,000 is not a cost of plaintiff's foreclosure action. It resulted solely from Lynbrook's garnishment in connection with its counterclaim against plaintiff. Whether or not Lynbrook should have been required to reimburse plaintiff for this expenditure depends on the validity of Lynbrook's counterclaim. Since we do not pass on the validity of that counterclaim, which is reinstated, we cannot sustain the award of this bond premium as a cost or disbursement. Therefore, the original summary default judgment entered must be reduced by $3,000 to $23,831.44.

Reversed in part, affirmed in part, and remanded for proceedings not inconsistent with this opinion.

---

[3] See, Larson-Roberts Elec. Co. v. Burdick, 267 Minn. 486, 127 N. W. (2d) 163.