## TOM AVERY v. DANA CAMPBELL.
## GOPHER AVIATION, INC., INTERVENOR.

157 N. W. (2d) 42.

March 8, 1968—No. 40,483.

*Maun, Hazel, Green, Hayes, Simon & Aretz* and *Merlyn C. Green,* for appellant.

*Rietz & Rietz,* for respondent.

ROGOSHESKE, JUSTICE.

Appeal by Gopher Aviation, Inc., as intervenor, from an order denying its motion to intervene and to set aside a default judgment obtained by plaintiff, Tom Avery, against defendant, Dana Campbell, in an action for personal injury damages arising out of the crash of a helicopter leased by Gopher to Avery.

The accident giving rise to the suit by Avery against Campbell occurred on November 3, 1964. This was 11 days after Gopher, engaged in the sale and rental of aircraft at Rochester, leased the helicopter to Avery pursuant to a written lease. The lease included a provision that Gopher would provide liability insurance with coverage extended "only to named pilots Tom Avery and Dana Campbell, and Gopher Aviation [would] have the privilege of checking out such pilots prior to their operation of the aircraft." Both Campbell and Avery are qualified as helicopter pilots and at the time of the crash Avery was a passenger and Campbell, as his employee, was piloting the helicopter. Avery sustained extensive injuries.

In order to understand the basis for Gopher's efforts to intervene, it is necessary to detail the procedural history. On March 17, 1965, Avery commenced his action against Campbell, alleging negligence and resulting damages (including medical expenses, loss of earnings, and permanent disability) totaling $100,000. After service of process, Campbell consulted with Avery's attorneys and was advised to "take the summons and complaint to either Gopher or to Transport Indemnity," Gopher's liability insurance carrier. Campbell took them to Gopher, and on March 25 Gopher forwarded a photostat copy of the summons and complaint to Transport's Chicago office and requested

advice as to coverage. On March 30, Transport informed Gopher that coverage did not extend to Campbell and that he should be advised to seek his own counsel. Campbell was so informed by Gopher's sending a copy of Transport's letter to him. On April 8, Campbell was further informed by a registered letter from Transport that while the policy written for Gopher had been extended to cover Avery as an additional insured, it did not cover him, Campbell. This letter emphasized that the insurance company "will not undertake to defend you in this action," and that he should seek legal counsel to assist him. The letter also warned of the consequences of inaction— that "if you fail to serve and answer upon plaintiff's attorney within the required time, a judgment by default will be taken." As will later appear, Gopher, during the course of these proceedings, disputed Transport's denial of coverage and claimed that, before the crash, Transport through its agent agreed to add coverage for Campbell.

Campbell, however, did not answer the complaint and, on May 7, a judgment by default was entered against him in favor of Avery for $100,000. On August 31, Campbell, presumably persuaded by a representative of Transport, signed a "NON-WAIVER AGREEMENT" under which attorneys for the insurance company agreed on his behalf (without waiving any coverage defenses) to move to set aside the default judgment. This agreement included a recital that Campbell disputed Transport's denial of coverage and that the parties intended to "preserve their rights pending a judicial determination of the dispute between them by means of a Declaratory Judgment action to be instituted by the Company." Accordingly, Transport, contemporaneously with the service of the motion to vacate the default judgment, commenced a declaratory judgment action against both Campbell and Avery in the Federal court.

In support of the motion to set aside the default judgment, notice of which was served on September 3, Campbell signed an affidavit reciting that he was "of the belief that the only way that Tom Avery could collect from the insurance company in this case and determine the question of coverage was to have the summons and complaint issued

against [him] as a defendant"; that he was "surprised" to receive notice of the judgment; and that he had a "good and valid defense to the claim." The motion was heard on October 1 and included oral testimony by Campbell. While his testimony is confusing and ambiguous, it cannot fairly be read without receiving the impression that his lack of concern for Avery's suit against him was due to his understanding that the suit against him was simply for the purpose of using him, in effect, as a conduit to seek recovery from the insurance company.

Gopher was unaware of either the default judgment or the motion to vacate until September 17, 1965, when Avery's attorneys informed it of Transport's action for a declaratory judgment against their client and of Avery's intention not to answer but to rely upon Gopher's obligation under the lease. Upon becoming aware of the status of the matter, Gopher took the position that since the defense of the action had never been tendered to it and its interest in the pending motion to vacate the judgment was identical with Campbell's and Transport's, no action was required. Gopher, however, did thereafter take steps to obtain, and finally succeeded in obtaining, an order granting leave to intervene in Transport's declaratory judgment action. While a decision on the motion to vacate was pending, Avery, on January 19, 1966, brought suit against Gopher to recover the amount of the default judgment. This action was based upon a claimed breach by Gopher of its contractual obligation to provide liability insurance coverage for Campbell. It was accompanied by the service of garnishment summons upon several Rochester banks. The motion to vacate the default judgment was never decided by the court as Campbell, on February 2, discharged the attorneys provided for him by the insurance company, hired personal counsel, and served and filed a notice of dismissal and withdrawal of the motion. Being advised on February 4 of Campbell's dismissal of the motion, Gopher, by order to show cause returnable on February 18, moved to intervene and to set aside the default judgment. Gopher also served a third-party complaint against Transport in Avery's suit against it, seeking to reform the terms of the insurance policy to extend coverage to Campbell and also claiming indemnity for any

recovery against it. Both this action and Transport's declaratory judgment action are still pending.

The trial court denied Gopher's motion to intervene and to vacate the default judgment essentially upon the ground that under Rule 24.01(1), Rules of Civil Procedure, Gopher "has not demonstrated that it may ' * * * lose by the *direct* legal effect of the judgment entered herein' " because the "ultimate result for Gopher will be determined by the outcome of two other actions." The court went on to explain: "It seems to us that to reopen this judgment at this time and allow intervention by Gopher would only delay resolution of this dispute" which may be determined by the outcome of the two pending actions.

Contrary to Avery's position on appeal, we cannot agree that the court based its denial upon the ground that Gopher's application was untimely. It is undisputed that Gopher did not become aware of the default judgment or realize its potential liability for that judgment under the lease until after Campbell had moved to vacate. Promptly upon Campbell's withdrawal of that motion, application to intervene was made.[1] There is no doubt that the application under these circumstances was timely.

Aside from what might be said about Gopher's initial indifference to its potential liability as an indemnitor under its lease and Avery's failure to join Gopher in his action against Campbell,[2] we are of the opinion that the default judgment should have been set aside and that Gopher was entitled to intervene as of right pursuant to Rule 24.01(1), which provides that upon "timely application" intervention shall be permitted "when the applicant has such an interest in the matter in litigation that he may either gain or lose by the direct legal effect of the judgment therein whether or not he were a party to the action." This rule is designed to grant to one who is left out of a suit a right to become a party despite objection by the parties to the action in order to prevent judicial processes "from

---

[1] See, 4 Moore, Federal Practice (2 ed.) par. 24.13[1]; Annotation, 37 A. L. R. (2d) 1311, 1316.

[2] Rule 18.01, Rules of Civil Procedure.

being used to the prejudice of the rights of interested third persons." 4 Moore, Federal Practice (2 ed.) par. 24.03, p. 14. Except for the words "whether or not he were a party to the action," the language of this portion of the rule was taken from our former intervention statute,[3] which it superseded. In spite of the ambiguity these added words have injected into the meaning of this rule, the Advisory Committee,[4] the leading commentator,[5] and others,[6] all agree that the rule, when adopted, was intended to codify the holding of Faricy v. St. Paul Investment & Sav. Society, 110 Minn. 311, 319, 125 N. W. 676, 679, in which decision it was held:

"* * * [A] party is entitled to intervene when he would necessarily gain or lose by the direct legal effect of the judgment therein if he became a party to the action, * * *."

It is not necessary also to establish that such would be the effect if he were not made a party. That the rule as worded was not intended as a limitation on intervention as of right or as a modification of the Faricy holding is made clear by In re Application of Sister Kenny Foundation, Inc. 267 Minn. 352, 126 N. W. (2d) 640, where we declared our agreement that the rule was intended to codify the holding in Faricy, and applied the rule accordingly.

Applying the rule to the facts before us, it is apparent that if Gopher became a party to the action by Avery against Campbell, it would surely suffer loss by the legal effect of the judgment because of its potential liability therefor. If the judgment were vacated, as we believe it must be, and the issues of liability and damages litigated on the merits, Gopher would also necessarily stand to gain, since a finding of no liability would end the matter—including Avery's suit against it as well as its involvement in Transport's declaratory judgment action. Even though liability were established, however, a

---

[3] Minn. St. 1941, § 544.13.

[4] Rules of Civil Procedure, Tentative Draft, Note 4 to Rule 24.01.

[5] 2 Pirsig, Minn. Pleading (4 ed.) § 2024.

[6] Wright, *Joinder of Claims and Parties under Modern Pleading Rules*, 36 Minn. L. Rev. 580, 628.

gain to Gopher would result, for a reduction in the amount of damages seems reasonably likely in view of the fact that the evidence supporting the $100,000 default award, perhaps quite understandably, appears wholly insufficient.

The fact that an intervenor may have another remedy does not preclude intervention to permit Gopher to take what appears to be the most direct procedure by which a final disposition of this controversy may be accomplished. McAllen v. Hodge, 92 Minn. 68, 99 N. W. 424; 2 Pirsig, Minn. Pleading (4 ed.) § 2025. With the requirements of the rule fulfilled, we hold that intervention as of right should have been granted.

Gopher argues that it was also entitled to intervention of right under clause (2) of Rule 24.01.[7] Although such may be the case, no benefit would be derived from discussing the application of this portion of the rule because the rule now has been substantially changed. Effective February 1, 1968, the rule is amended to read:

"Upon timely application anyone shall be permitted to intervene in an action when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

This amendment removes the previous ambiguity and is designed to encourage more extensive use of intervention. Application of this rule would certainly entitle Gopher to intervene. Gopher's substantial interest in the Avery action is not represented by Campbell, and it is so situated that the disposition of the action, as a practical matter, has impaired its ability to protect that interest. The right to protect that interest is parallel with its liability to pay any judgment entered, which obligation both Campbell and Avery claim exists under the lease.

---

[7] Rule 24.01(2) provides that intervention shall be permitted "when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action."

While we do not base our decision upon the application of the rule as now amended, it should be noted that Rule 86.02 does apply to pending actions except where not feasible or injustice results.

Of course, our decision entitling Gopher to intervene contemplates that the default judgment must be set aside. Avery presents no arguments to the contrary, and the record clearly demonstrates that, had the trial court been permitted to decide Campbell's motion, setting aside the default would have been compelled under the showing made.

Reversed.