Glenn M. HELLER, Applicant for Intervention, Appellant (C3–95–2247),

Patsy Loverude and Her Minor Children, et al., and Tessa L. Koller, a Minor by Her Mother Margaret R. Koller, Applicants for Intervention, Appellants (C5–95–2590),

Harold Eugene McDowell, et al., Respondents (C3–95–2247), Plaintiffs (C5–95–2590),

v.

SCHWAN'S SALES ENTERPRISES, INC., Respondent.

Nos. C3–95–2247, C5–95–2590.

Court of Appeals of Minnesota.

May 21, 1996.

Review Denied Aug. 6, 1996.

---

Glenn M. Heller, Bethesda, MD, pro se.

Fred Burstein, Dylan J. McFarland, Steven M. Burstein, Burstein, Hertogs, Olsen &

McFarland, P.A., Minneapolis, Clinton A. Krislov, Krislov & Associates, Ltd., Chicago, IL, for Appellants in No. C5-95-2590.

Karl L. Cambronne, Jack L. Chestnut, Jeffrey D. Bores, Chestnut & Brooks, P.A., Minneapolis, Mark Reinhardt, Gary D. Ansel, Gavin S. Wilkinson, Reinhardt & Anderson, St. Paul, Charles H. Johnson, Charles H. Johnson & Assocs., New Brighton, Kevin W. Rouse, Minneapolis, Charles S. Zimmerman, Zimmerman Reed P.L.L.P., Minneapolis, for Respondents in No. C3-95-2247.

James A. O'Neal, Scott W. Johnson, Bridget M. Ahmann, Faegre & Benson, Minneapolis, for Schwan's Sales Enterprises, Inc.

Considered and decided by LANSING, P.J., and SCHUMACHER and SHORT, JJ.

## OPINION

LANSING, Judge.

A Minnesota district court approved settlement of a consolidated class action for claims stemming from salmonella bacteria found in Schwan's ice cream product. Illinois objectors challenge the adequacy of the settlement in light of the injuries suffered, and an unsuccessful applicant for intervention appeals the denial of his application.

## FACTS

On October 7, 1994, the Minnesota Department of Health informed Schwan's Sales Enterprises of a statistical link between its ice cream products and an increase in salmonella enteritis cases. Schwan's closed its Marshall, Minnesota plant that day. Two days later, Schwan's began voluntarily recalling its ice cream products. The Minnesota Department of Agriculture, the Minnesota Department of Health, and the U.S. Food and Drug Administration later prepared a report detailing their investigations. They determined the source of the salmonella outbreak was a tanker truck that had hauled unpasteurized liquid eggs and then remained in a parking lot for several ninety-degree days before hauling Schwan's ice cream mix.

From October 10 to November 4, plaintiffs filed five class action lawsuits, later consolidated, in Minnesota. Two families, the Lov-

erudes and the Kollers (Illinois objectors), filed suit in Illinois in early November 1994. In February 1995 the Illinois court stayed that litigation.

The Minnesota district court gave preliminary approval to a settlement agreement on February 3, 1995. The court certified the class on February 17, 1995. The court held a final approval hearing for the class settlement on August 1, 1995. The Illinois objectors moved to intervene and objected to the settlement. Glenn Heller, acting pro se, also filed a notice of his intent to intervene and objected to the settlement.

In its findings of fact and order issued August 28, 1995, the district court approved the class settlement as fair, adequate, and reasonable. It granted the Illinois objectors' motion to intervene and denied Heller's intervention. The Illinois court dismissed the Illinois action on September 28, 1995. Both Heller and the Illinois objectors appealed, and this court consolidated the appeals.

## ISSUES

I. Did the district court err by approving the settlement?

II. Did the district court err by denying Heller's intervention?

## ANALYSIS

### I

■ A district court's approval of a proposed settlement in a class action is reviewed for abuse of discretion. *State by Wilson v. St. Joseph's Hosp.*, 366 N.W.2d 403, 407 (Minn.App.1985); *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir.1988). A court may approve a class action settlement if it is fair, adequate, reasonable, and not the product of collusion between the parties. *SST, Inc. v. City of Minneapolis*, 288 N.W.2d 225, 231 (Minn.1979). The court must compare the settlement's terms with the results the plaintiffs would have likely received after a full trial. *Id.*

■ The Illinois objectors note that this is the first Minnesota appellate court to review a multistate class action settlement. A state

district court may exercise jurisdiction over a multistate class. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811, 105 S.Ct. 2965, 2974, 86 L.Ed.2d 628 (1985). The state court must provide "minimal procedural due process protection," including a choice of law that is not arbitrary or fundamentally unfair. *Id.* at 812–13, 105 S.Ct. at 2974.

The settlement establishes three categories of relief. First, class members who suffered up to twenty days receive special damages plus compensation according to a matrix, ranging from $80 to $4800. Class I under the matrix, which includes people who did not seek medical treatment (and so have no verification of salmonella enteritis) and people with symptoms for less than five days, receives $80 per person, less attorneys' fees.

Second, those hospitalized for five or more nights, those with pregnancy complications, those suffering disability for over twenty days, or those with permanent injury, fall outside the matrix and negotiate separately with class attorneys' assistance. The maximum amount to be paid any one claim is $75,000. Unresolved negotiations will be submitted to arbitration. Third, a class member may "opt out" of the settlement class to independently litigate against Schwan's.

■ These are the essential settlement terms that we compare to the plaintiffs' likely results at trial. Both the class representatives' claims and the Illinois objectors' claims include strict product liability and negligence.[1] A strict product liability plaintiff must prove the product was defective, the defect existed when the product left the defendant's hands, and the defect caused the plaintiff's injuries. *Worden v. Gangelhoff,* 308 Minn. 252, 254–55, 241 N.W.2d 650, 651 (1976) (citation omitted). Schwan's admitted that some of its ice cream product "left Schwan's plant in Marshall and was put into the stream of commerce containing some quantity of salmonella bacteria." Consequently, the plaintiffs must only prove Schwan's defective products proximately caused their injuries. Similarly, on their negligence claims, the plaintiffs would be required to prove proximate cause and damages.

■ Most of the plaintiffs would find it difficult to demonstrate that Schwan's products proximately caused their injuries. It is undisputed that the vast majority of the plaintiffs fall in Class I of the matrix, with symptoms lasting less than five days or without a stool culture to confirm salmonella enteritis. Because the symptoms of salmonella enteritis resemble other illness, such as the flu, for many plaintiffs the link between their illness and Schwan's products is tenuous. These class members, who might otherwise receive no compensation at trial, receive compensation under the settlement. The settlement pays all their special damages plus about $67 ($80 minus the 1/6 attorneys' fees). The Class I plaintiffs claim no permanent injury. The settlement terms compare favorably to their likely small or nonexistent recovery in trial.

■ Those with more serious injuries negotiate outside the matrix, with arbitration provided for inconclusive negotiations. Plaintiffs may also opt out of the settlement and independently seek relief. Plaintiffs with serious injuries presumably could establish from medical reports that Schwan's ice cream products proximately caused their injuries. Their recovery at trial seems assured. But the settlement provides relief faster and with fewer transaction costs than full litigation. *See Mars Steel Corp. v. Continental Ill. Nat. Bank & Trust,* 834 F.2d 677, 682 (7th Cir.1987) (considering costs in evaluating settlement). The flexibility and efficiency of the settlement as to these serious injuries compares favorably to the likely results after litigation.

The Illinois objectors argue that $67 is inadequate to compensate those who could not afford medical treatment. But, Schwan's repeatedly advised its customers to see a physician, take the test to confirm salmonella

---

1. The other class representatives' claims were violations of Minnesota Food Law Minn.Stat. §§ 31.02(a),(b) (1994), 31.121(a),(f) (1994), 31.161 (1994) and negligence per se for violating the Food Law. The Illinois objectors also sued Schwan's for willful and wanton conduct, breach of warranties of merchantability and fitness, and consumer fraud.

enteritis, and that Schwan's would pay for it. The Illinois objectors appear to overlook the maxim that compromise is the heart of settlement. The issue is not whether the sufferings of Class I plaintiffs equals only $67, but whether that figure is a reasonable settlement value.

■ Furthermore, the potential class overwhelmingly supported the settlement. At the time of the final approval hearing, over 13,000 individuals had submitted claims under the settlement. Only six people objected to the settlement; only 214 people opted out of the class. Even if a "significant percentage" of class members objects to the settlement, the court may approve the settlement. *Van Horn,* 840 F.2d at 606 (approving settlement although 180 of 400 class members objected). That so few plaintiffs objected to the settlement is a significant factor that supports the fairness and adequacy of the settlement terms.

■ The Illinois objectors allege that class counsel performed insufficient discovery before discussing settlement. The district court concluded that "well-publicized investigations by government agencies and admissions made by Schwan's have mitigated the need for liability discovery in order to evaluate the merits of the settlement." The record supports this conclusion. The Minnesota Department of Health, the Minnesota Department of Agriculture, and the U.S. Food and Drug Administration all investigated the cause and course of this salmonella outbreak.

■ The Illinois objectors argue that the settlement pales in comparison with 1984 and 1985 salmonella class action settlements in Illinois. But the district court is not required to make such a comparison with different settlements in other districts. *Foe v. Cuomo,* 892 F.2d 196, 198 (2d Cir.1989), *cert. denied,* 498 U.S. 972, 111 S.Ct. 441, 112 L.Ed.2d 424 (1990). And both the 1984 and 1985 settlements are distinguishable from this case. The 1984 *Jewel* settlement required a culture confirmation, and would exclude the majority of the class in this case. Similarly, the 1985 *Jewel* stipulation to expedite a punitive damages trial required a culture confirmation. Moreover, litigation from the 1985 salmonella outbreak extended for years; some claims were still active in 1995.

■ Finally, the Illinois objectors allege the settlement awards the class counsel excessive attorneys' fees. Class counsel receive 1/6 of the amounts paid to class members. This method of allocating attorneys' fees as a proportion of the recovery for each class member is acceptable as an application of the common-fund doctrine. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 480–81, 100 S.Ct. 745, 750, 62 L.Ed.2d 676 (1980). In addition, class counsel receive reimbursement of up to $5,000 in costs and up to $200,000 for arbitration of disputes outside the matrix, not deducted from class members' recovery.

■ The district court stated that the class counsel "are known to this Court to be competent litigators with extensive class action experience." The court found that the class counsel "provided a substantial common benefit to the plaintiff class by zealously pursuing and funding this litigation." The class counsel briefed and argued four "substantial motions" in five weeks. The court found both the 1/6 ratio and the costs and hourly fees for arbitration "fair and reasonable." We set aside factual findings "only if this court on the entire record is left with the definite and firm conviction that a mistake has been made." *SST,* 288 N.W.2d at 231. The record supports the district court's findings and its ultimate conclusion.

## II

On July 28, 1995, Heller filed a notice of intervention seeking to become an independent party to this litigation. In a supporting affidavit, he claimed that he purchased Schwan's products, that the attorney's fees incurred by the settlement class were excessive, and that retail prices for Schwan's ice cream would increase as a result of the settlement.

The district court denied Heller's intervention because Heller did not state that he suffered any injury from ingesting Schwan's products. The court also held that even if it permitted Heller to join the action, the court would overrule his objections to the settlement.

Heller did not specify whether he sought intervention as a matter of right pursuant to Minn. R. Civ. P. 24.01 or permissive intervention pursuant to Minn. R. Civ. P. 24.02. Intervention as a matter of right requires "an interest relating to the property or transaction which is the subject of the action." Minn. R. Civ. P. 24.01; *Minneapolis Star & Tribune Co. v. Schumacher*, 392 N.W.2d 197, 207 (Minn.1986). A district court may allow, as with the Illinois objectors, permissive intervention when the applicant's claim or defense and the main action have a common question of law or fact and after considering whether intervention will unduly delay or prejudice the rights of the other parties. Minn. R. Civ. P. 24.02. The grant of permissive intervention lies within the discretion of the district court. *SST*, 288 N.W.2d at 231.

Heller did not establish any interest in the underlying action. He did not claim that he suffered any injury as a result of consuming Schwan's ice cream. He merely criticized the class attorneys' fees and speculated that the settlement may increase the price of Schwan's products. By failing to allege any injury, Heller's petition failed to assert a common question of law or fact with the underlying action. Because we conclude the district court properly denied Heller's intervention application under either theory, we do not consider his substantive arguments on the settlement.

### DECISION

The district court properly approved the class action settlement as fair, adequate, and reasonable.

**Affirmed.**