**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2013 Term**

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0037

**HARTFORD FIRE INSURANCE CO.,**
**Defendant Below, Petitioner**

**V.**

**MICAH A. CURTIS AND ANGELA L. CURTIS,**
**Plaintiffs Below, Respondents**

**Appeal from the Circuit Court of Jackson County**
**Honorable J.D. Beane, Judge**
**Civil Action No. 08-C-157**
**AFFIRMED**

**AND**

No. 12-0522

**HARTFORD FIRE INSURANCE CO.,**
**Defendant Below, Petitioner**

**V.**

**JERRY LEE RHODES AND BONNIE M. COCHRAN**
**Plaintiffs Below, Respondents**

---

**Appeal from the Circuit Court of Kanawha County**
**Honorable James C. Stucky, Judge**
**Civil Action No. 10-C-592**
**AFFIRMED**

---

**Submitted: April 17, 2013**
**Filed: June 5, 2013**

| | |
|---|---|
| Thomas V. Flaherty | Daniel F. Hedges |
| Flaherty Sensabaugh Bonasso PLLC | Mountain State Justice, Inc. |
| Charleston, West Virginia | Charleston, West Virginia |
| Archibald Wallace, III | Scott S. Blass |
| WallacePledger, PLLC | Bordas & Bordas, PLLC |
| Richmond, Virginia | Wheeling, West Virginia |
| Attorneys for Petitioner Hartford | Attorneys for the Respondents |
| in case No. 12-0037 | |
| | |
| Archibald Wallace, III | Gene W. Bailey, II |
| Thomas J. Moran | Jill E. Hall |
| WallacePledger, PLLC | Bowles Rice McDavid Graff & Love LLP |
| Richmond, Virginia | Charleston, West Virginia |
| Attorneys for Petitioner Hartford | Attorneys for *Amicus Curiae*, |
| in case No. 12-0522 | The Surety & Fidelity Association |
| | of America |

**JUSTICE DAVIS delivered the Opinion of the Court.**

**CHIEF JUSTICE BENJAMIN and JUSTICE KETCHUM dissent and reserve the right to file dissenting opinions.**

**SYLLABUS BY THE COURT**

1.      "A judgment against a principal does not bind the surety conclusively, as a general rule, but it is *prima facie* evidence of liability and its extent.  If, however, the instrument binds its makers to abide the result of certain litigation, or to satisfy any judgment therein, or to indemnify against it, a judgment against the principal is conclusive upon the sureties, so that they cannot contest the liability, in the absence of fraud or collusion."  Syllabus point 4, *State v. Nutter*, 44 W. Va. 385, 30 S.E. 67 (1898).

2.      The surety on a judgment bond is conclusively bound by a default judgment entered against its principal, even when the surety did not have notice of the prior suit against the principal, so long as the judgment is the type of judgment contemplated by the bond and the surety cannot establish collusion or fraud.

3.      "Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.  Those defendants against whom the verdict is rendered are jointly and severally liable to the plaintiff for payment of the remainder of the verdict.  Where the relative fault of the nonsettling defendants has been determined, they may seek contribution among themselves after judgment if forced to pay more than their allocated share of the verdict.  Syllabus point 7, *Board of Education of*

i

*McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990).

4.    """"Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong."  Point 2, Syllabus, *Hardin v. The New York Central Railroad Company*, 145 W. Va. 676[, 116 S.E.2d 697 (1960)].'  Syllabus Point 1, *Tennant v. Craig*, 156 W. Va. 632, 195 S.E.2d 727 (1973)."  Syllabus point 5, *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990).

**Davis, Justice:**

In these two consolidated cases, Hartford Fire Insurance Co. (hereinafter "Hartford") appeals from two separate summary judgment orders entered against it in two separate cases. Each case involved a bond for which Hartford was the surety. The principals under the bonds, a mortgage lender and a mortgage broker, are both now defunct. Each bond principal was sued and failed to file a response to the complaint filed against it, which resulted in the entry of default judgments in both cases. Hartford was not given notice of either lawsuit against its principals, or notice that default judgments were being sought. Hartford was notified of the default judgments only after the same had already been entered, when the plaintiffs in those cases sought payment under the bonds. In each case, Hartford ultimately was found liable on the bond notwithstanding Hartford's lack of notice or an opportunity to present a defense. On appeal, Hartford asserts that the circuit courts erred in finding the bonds to be judgment bonds and in holding Hartford liable on the bonds under the circumstances presented in these cases. In addition, Hartford complains that the Circuit Court of Kanawha County erred by refusing to grant Hartford credit for a settlement the plaintiffs reached with other defendants named in the case before that court. For the reasons set out in the body of this opinion, we conclude that the two bonds at issue in these consolidated cases are judgment bonds; therefore, the circuit courts correctly found that default judgments entered against the bond principals are conclusive and binding against Hartford. We further conclude that the Circuit Court of Kanawha County correctly declined to grant Hartford credit against a default judgment for a settlement that did not exist at the

1

time the default judgment was entered.  Accordingly, both of the instant cases are affirmed.

# I.

## FACTUAL AND PROCEDURAL HISTORY

For purposes of this opinion, this Court has consolidated two cases that, in part, raise the same issues.  We set forth the relevant facts of each case separately below.

### A.  Appeal No. 12-0037:  Curtis History

Micah A. Curtis and Angela L. Curtis (hereinafter "the Curtises"), residents of Jackson County, West Virginia, brought the suit underlying the instant dispute that is the subject of Appeal Number 12-0037.  The Curtises had obtained refinancing of the mortgage on their home from Calusa Investments, LLC (hereinafter "Calusa"), a mortgage lender licensed and operating in West Virginia.  In order to obtain and maintain its license to conduct business in West Virginia, Calusa was required, under W. Va. Code § 31-17-4 (2002) (Repl. Vol. 2003),[1] to obtain a mortgage lender bond. Accordingly, Calusa obtained a mortgage lender bond from Hartford, the petitioner in this appeal.  Hartford was the surety on the $100,000 mortgage lender bond issued to Calusa as its principal.

On October 1, 2008, the Curtises filed a complaint against several defendants,

---

[1]See *infra* note 6 for a discussion of W. Va. Code § 31-17-4.

2

including Calusa, in the Circuit Court of Jackson County. The claims made by the Curtises against Calusa essentially were that Calusa had made certain misrepresentations and taken certain actions that caused the Curtises to refinance the mortgage on their home on unfavorable terms. At that time, Hartford was not made a party to the lawsuit and was not informed of the suit or a potential claim against its principal.

Calusa apparently had become defunct and failed to respond to the complaint. Due to Calusa's failure to respond to the complaint, the Curtises obtained a default judgment against Calusa in the amount of $99,795.05, plus post-judgment interest. Calusa failed to satisfy the judgment. Hartford, as surety on Calusa's mortgage lender bond, was subsequently notified, on January 12, 2009, of the Curtises' claim against Calusa. The Curtises requested Hartford to satisfy the judgment they had obtained against Calusa. On March 26, 2010, the circuit court granted leave to the Curtises to file an amended complaint adding Hartford as a party defendant. Meanwhile, after the entry of default judgment against it, Calusa attempted to enter the case late, filing motions seeking to have the trial court either set aside the default judgment or grant Calusa a hearing on the issue of damages. The circuit court denied both motions and reaffirmed the judgment against Calusa by its orders dated December 21, 2010, and January 10, 2011.

The Curtises then filed a motion for partial summary judgment asking the circuit court to find, as a matter of law, that Hartford was liable for the entirety of the

judgment under the terms of the bond it issued to Calusa. Hartford opposed the motion on

the grounds that it had not been notified of the action against Calusa and that it had been

denied an opportunity to present defenses or challenge the amount of damages claimed.

Following arguments on the motion, the circuit court entered an order, on July 13, 2011,

granting partial summary judgment in favor of the Curtises and finding Hartford was

obligated to satisfy the default judgment awarded against Calusa. In this regard, the circuit

court examined the language of the bond and concluded that said language

> clearly establishes that the condition that the Plaintiffs needed
> to satisfy in this case is a judgment against Calusa involving
> conduct violating the provisions of Article 17, Chapter 31 of the
> West Virginia Code. There is no other language in the Bond to
> indicate that the Plaintiffs should first be required to try their
> case against Calusa, determine if Calusa will pay any judgment
> obtained, and then, upon Calusa's failure to pay such a
> judgment, try their case a second time against Hartford. Instead,
> the Bond provides that once the Plaintiffs obtain a judgment
> against Calusa, they can proceed against the Bond and Hartford,
> as surety on the bond, is obligated to pay the judgment as it
> contracted.

The circuit court entered a "Final Judgment Order Regarding Count IV of the Complaint"

on December 5, 2011, in which it awarded final judgment in favor of the Curtises against

Hartford in the amount of $99,795.05 plus accrued statutory interest. The circuit court

included in the order the appropriate language rendering the judgment final and appealable

to this Court in accordance with Rule 54(b) of the West Virginia Rules of Civil Procedure.

4

It is from this order that Hartford appeals.[2]  Finding commonality in the issues herein raised and those raised in the case of *Hartford v. Jerry Lee Rhodes and Bonnie M. Cochran*, Appeal Number 12-0522, we have consolidated the two cases for purposes of our review.

### B.  Appeal Number 12-0522:  Rhodes/Cochran History

The suit underlying the dispute in this case was brought by Jerry Lee Rhodes, the sole owner of real property at issue in the case, and Bonnie M. Cochran, Mr. Rhodes' former live-in girlfriend (hereinafter collectively referred to as "Rhodes/Cochran"), against Equity South Mortgage, LLC ("Equity South"), and others.  Equity South was a residential mortgage broker licensed to operate a mortgage brokering business in West Virginia.  To obtain and maintain its license to conduct business in West Virginia, Equity South was required to obtain a mortgage broker bond pursuant to W. Va. Code § 31-17-4.[3] Accordingly, Equity South obtained a mortgage broker bond from Hartford, the petitioner in this appeal.  Hartford was the surety on the $50,000 mortgage broker bond issued to Equity South as principal.

On March 3, 2008, Rhodes/Cochran filed their suit against Equity South and

---

[2]Also appearing before the Court in this proceeding is the Surety and Fidelity Association of America as *Amicus Curiae* in support of Hartford's position in this case.  We appreciate the appearance of *Amicus Curiae* and will consider its arguments in conjunction with those of Hartford.

[3]See *infra* note 6 for a discussion of W. Va. Code § 31-17-4.

others in the Circuit Court of Putnam County, West Virginia, seeking damages in connection with two allegedly oppressive home improvement loans brokered by Equity South (hereinafter "the Putnam County case").[4]  Rhodes/Cochran alleged, in relevant part, that Equity South had obtained an inflated appraisal of the home, misrepresented critical facts in writing the loan, and engaged in other improper and predatory lending practices.  Hartford was not made a party to the lawsuit and was not, at that time, informed of the suit or a potential claim against its principal, Equity South.

Equity South apparently had become defunct and failed to file a response to the complaint.  Due to Equity South's failure to respond to the complaint, Rhodes/Cochran obtained a default judgment against Equity South, on October 14, 2008, in the amount of $56,300 plus post-judgment interest.[5]  Claims against the other defendants in the case remained pending for resolution.  Equity South failed to satisfy the judgment.

Thereafter, Rhodes/Cochran presented Hartford with a claim for payment under

[4]Plaintiff Jerry Lee Rhodes owns and resides in the home against which the two loans were secured.  Plaintiff Bonnie M. Cochran moved out of the home in 2006 when her relationship with Mr. Rhodes ended.  Ms. Cochran does not hold an interest in the property at issue and never has.  However, it was alleged in the Putnam County case that Equity South misrepresented that Ms. Cochran was an owner of the home for purposes of including her as a debtor on the home improvement loans.

[5]The circuit court's order states that the default judgment was for the amount of $50,000; however, both parties to this appeal agree that the amount of the default judgment was $56,300.

the mortgage broker bond issued to Equity South. Hartford refused to pay, and, on March 29, 2010, Rhodes/Cochran filed their complaint against Hartford in the case *sub judice* in the Circuit Court of Kanawha County, West Virginia (hereinafter "the Kanawha County case"). Hartford filed its answer to the complaint in May 2010, and no further action was taken in the case for some time. Meanwhile, Rhodes/Cochran pursued settlement with the remaining defendants in the Putnam County case. On August 4, 2010, Rhodes/Cochran entered into a formal settlement agreement with some of the remaining defendants in the Putnam County case. Under the terms of the settlement, the settling defendants agreed to (1) void the loan, (2) release the deed of trust on the real property owned by Plaintiff Rhodes, and (3) delete the trade line for the account to cure all negative credit reporting against Rhodes/Cochran relating to their default under the loan.

On December 19, 2011, Rhodes/Cochran filed a motion for summary judgment in the Kanawha County case asking the circuit court to hold Hartford, as surety on the Equity South mortgage broker bond, liable for the default judgment entered against Equity South in the Putnam County case. Hartford opposed the motion on the grounds that it had not been notified of the Putnam County case against Equity South and that it had been denied an opportunity to present defenses or challenge the amount of damages claimed. Following arguments on the motion, the circuit court ultimately granted summary judgment in favor of Rhodes/Cochran, by final order entered on March 27, 2012, and entered judgment against Hartford in the amount of $50,000, which represented the amount of the bond. In reaching

7

this conclusion, the circuit court found that the bond was a judgment bond and observed that, "[u]nder West Virginia law, a surety on a judgment bond is conclusively obligated to pay any judgment rendered against the principal." (Citation omitted). In addition, the circuit court denied Hartford's request for a credit against the judgment in an amount equal to the funds paid in settlement by some of the defendants in the Putnam County case. It is from this order that Hartford now appeals. Finding common issues in this case and the case of *Hartford v. Curtis*, Appeal Number 12-0037, we have consolidated the two cases for purposes of our review.

## II.

## STANDARD OF REVIEW

The instant consolidated cases are both before this Court on appeals from circuit court orders granting summary judgment in favor of the plaintiffs in the actions below. Therefore, our review is *de novo*. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). This Court has further explained that "[w]hen undertaking our plenary review, we apply the same standard for granting summary judgment as would be applied by a circuit court." *Subcarrier Commc'ns, Inc. v. Nield*, 218 W. Va. 292, 296, 624 S.E.2d 729, 733 (2005). Accordingly, we observe that

> "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify

8

the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)." Syllabus point 1, *Andrick v. Town of Buckhannon*, 187 W. Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W. Va. 189, 451 S.E.2d 755. Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *id*. With these standards in mind, we now address the issues raised in these consolidated appeals.

## III.

## DISCUSSION

Hartford, who is the surety on the two bonds at issue (hereinafter "the Hartford bonds"), challenges the circuit courts' rulings requiring it to pay default judgments rendered against its principals when Hartford was not provided notice of the claims against the principals until after the judgments were rendered. To resolve this issue, it is necessary to first ascertain whether the Hartford bonds were judgment bonds, as determined by the circuit courts, or in the nature of performance bonds, as characterized by Hartford. After making this determination, we will resolve the question of whether Hartford was entitled to notice of the proceedings against its principals. Finally, we will address the issue of whether Hartford is entitled to a credit equal to the amount of a settlement reached with some of the defendants in the Rhodes/Cochran litigation.

9

### A. *Type of Bonds*

In order to resolve the central issue in this case, we first determine whether the bonds issued by Hartford were judgment bonds. In this regard, it has been explained that

> [t]he type of bond involved is not material unless it is an injunction or judgment bond. With this type of bond, the surety is obligating itself to pay a particular judgment rendered against a principal, even though the surety had no notice, so long as the judgment is one within the purview of the agreement between surety and principal. 74 Am. Jur. 2d *Suretyship* § 153 (1974). *See also* 46 Am. Jur. 2d *Judgments* § 553 (1969). In a judgment or injunction bond, the judgment against the principal is conclusive against the surety if it is free of fraud and collusion. 74 Am. Jur. 2d *Suretyship* § 153 (1974).

*Ohio Cas. Ins. Co. v. Kentucky Natural Res. & Envtl. Prot. Cabinet*, 722 S.W.2d 290, 292 (Ky. Ct. App. 1986).

Hartford argues, essentially, that the surety in a judgment bond explicitly grants the right to recover against the bond immediately upon a judgment against the principal. Hartford urges that the clear language of the bonds establishes that Hartford never agreed to pay unquestioningly any judgment rendered against its principals. Hartford claims that the obligation it bonded was the principals' compliance with state laws, rules, and orders relating to mortgage lenders, and the principals' payment of any moneys due to the State or persons designated by the State pursuant to a lawsuit brought by the Commissioner of Banking. Thus, Hartford argues, the bonds are in the nature of performance bonds. Directing this

10

Court's attention to *State v. Myers*, 74 W. Va. 488, 82 S.E. 270 (1914), a case involving a judgment bond, Hartford submits that, while the *Myers* opinion does not quote language from the bond therein being considered, the deciding factor in the case was that the surety "expressly stipulated" that paying a judgment or fine "shall be the condition of his bond." *State v. Myers*, 74 W. Va. at 492, 82 S.E. at 272.

Respondents, the Curtises and Rhodes/Cochran (hereinafter collectively referred to as "Respondents"), note that, through a performance bond, the surety guarantees the performance of an underlying contract. A judgment bond, on the other hand, is one in which the surety agrees to be liable for a judgment based on a specific violation covered by the bond. Respondents argue that the language used in the instant bonds demonstrates that Hartford agreed to be liable for judgments based upon its principals' violations of "Article 17, Chapter 31, of the Code of West Virginia." Thus, Respondents contend, the language of the bonds issued by Hartford is clear in expressing that the bonds are, in fact, judgment bonds.

In conducting our analysis, we are mindful that "[t]he liability of a surety is generally measured by his or her contract or bond." 72 C.J.S. *Principal and Surety* § 81 at 222 (2005) (footnotes omitted). *See In re Microwave Prods. of Am., Inc.* 118 B.R. 566, 570 (W.D. Tenn. 1990) ("The liability of the surety is measured by the terms of his contract." (citation omitted)); *State ex rel. Duckett v. Pettee*, 50 N.C. App. 119, 121, 273 S.E.2d 317,

11

319 (1980) ("The principal and his surety are liable under a contract expressed in definite terms and their liability cannot be carried beyond the fair meaning of those terms." (internal quotations and citation omitted)). In addition, consideration should be given to the statute requiring the bond: "The scope of a statutorily required surety bond is determined by the language and purpose of the bond and the terms of the statute it is given under." 72 C.J.S. *Principal and Surety* § 82 at 223.

To identify the type of bonds that were issued by Hartford, we will contrast judgment bonds with performance bonds, insofar as Hartford has argued that the Hartford bonds are in the nature of performance bonds.

A judgment bond has been described as a bond "'in which the surety agrees to be liable for a judgment based on a specific statutory violation covered by the bond.' *Lawyers Sur. Corp. v. Riverbend Bank, N.A.*, 966 S.W.2d 182, 188 (Tex. App.-Fort Worth 1998, no pet.)." *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d 210, 214 (Tex. Ct. App. 2005). *See also Ohio Cas. Ins. Co. v. Kentucky Natural Res. & Envtl. Prot. Cabinet*, 722 S.W.2d at 292 (explaining that "judgment bond" is a bond in which "the surety is obligating itself to pay a particular judgment rendered against a principal, even though the surety had no notice, so long as the judgment is one within the purview of the agreement between surety and principal. 74 Am. Jur. 2d *Suretyship* § 153 (1974).").

12

A performance bond, on the other hand, has been defined as: "1. A bond given by a surety to ensure the timely performance of a contract. . . . 2. A third party's agreement to guarantee the completion of a construction contract upon the default of the general contractor. Also termed *completion bond; surety bond; contract bond*." *Black's Law Dictionary* 1158 (7th ed. 1999).

Both of the Hartford bonds[6] utilized a mandatory bond form prepared by the West Virginia Commissioner of Banking.[7] The bonds are basically identical and state:

> THE CONDITION OF THE ABOVE OBLIGATION IS SUCH THAT; WHEREAS, the above bound principal, in pursuance of the provisions of Article 17, Chapter 31, of the Code of West Virginia, as amended, (hereinafter the "Act") has obtained, or is about to obtain, from the Commissioner of

---

[6]The principals on the two bonds were required by law to obtain the same prior to being issued a license to conduct their business in West Virginia. W. Va. Code § 31-17-4 (2002) (Repl. Vol. 2003) is the version of the statute in effect at the time the Hartford bonds were issued. While the statute has been amended over the years, the past and current versions of W. Va. Code § 31-17-4 still require license applicants to "[f]ile with the commissioner a bond in favor of the state for the benefit of consumers." *See* W. Va. Code § 31-17-4(b)(3) (2002) (Repl. Vol. 2003) (requiring bond in connection with application for lender's license); W. Va. Code § 31-17-4(c)(3) (2002) (Repl. Vol. 2003) (requiring bond in connection with application for broker's license); W. Va. Code § 31-17-4(e)(3) (2010) (Supp. 2012) (requiring bond in connection with application for lender's license); W. Va. Code § 31-17-4(f)(3) (2010) (Supp. 2012) (requiring bond in connection with application for broker's license).

[7]Because Hartford did not draft the bond, in considering its terms we will not apply the general rule that "when the surety is a corporation and supplies bonds for a consideration, the courts will construe the obligations of the bond most strongly against the surety. *See, Hicks v. Randich*, 106 W. Va. 109, 144 S.E. 887 (1928)." *Cecil I. Walker Mach. Co. v. Stauben, Inc.*, 159 W. Va. 563, 567-68, 230 S.E.2d 818, 820 (1976).

Banking of the State of West Virginia, a license to conduct a Mortgage Lender[/Broker] business.

NOW, THEREFORE, if the said principal [specific principal named here] shall conform to and abide by the provisions of said Act and of all rules and orders lawfully made or issued by the Commissioner of Banking thereunder, and shall pay to the State and shall pay to any such person or persons properly designated by the State any and all moneys that may become due or owing to the State or to such person or persons from said obligor in a suit brought by the Commission on their behalf under and by virtue of the provisions of said Act, then this obligation shall be void, otherwise it shall remain in full force and effect. *If any person shall be aggrieved by the misconduct of the principal, he may upon recovering judgement [sic] against such principal issue execution of such judgement [sic] and maintain an action upon the bond of the principal in any court having jurisdiction of the amount claimed, provided the Commissioner of Banking assents thereto*.

(Emphasis added).

The above-quoted language from the bonds requires, as Hartford contends, that the principals comply with Article 17, Chapter 31, of the West Virginia Code, which is known as the Mortgage Lender, Broker, and Servicer Act, and pay money due to the State or persons designated by the State under circumstances outlined in the bonds. Relevant to the instant cases, however, and as also quoted above, the bonds go on to specify that an aggrieved person "may *upon recovering judgement* [sic] *against such principal* issue execution of such judgement [sic] and maintain an action upon the bond of the principal[.]" (Emphasis added). Thus, the language of the Hartford bonds grants an aggrieved person who has obtained a judgment against the principal the right to execute said judgment through an

14

action upon the bond.[8]  Reading this plain language in light of the definition of a judgment

bond quoted above, it is clear that the Hartford bonds are judgment bonds.[9]  The foregoing

bond language plainly demonstrates that Hartford has "agree[d] to be liable for a judgment

based on a specific statutory violation covered by the bond," *i.e.*, a violation of the West

---

[8]In arguing the Hartford bonds are not judgment bonds, Hartford places significance on the fact that the bonds require an aggrieved person to "maintain an action upon the bond."  We find this argument unpersuasive.  An action on the bond would provide Hartford an opportunity to adjudicate the potential existence of collusion or fraud, or to challenge whether its principal's conduct violated a condition of the bond.  *See* Syl. pt. 4, in part, *State v. Nutter*, 44 W. Va. 385, 30 S.E. 67 (1898) (holding, for purposes of a judgment bond, that "a judgment against the principal is conclusive upon the sureties, so that they cannot contest the liability, *in the absence of fraud or collusion*" (emphasis added)).  *See also Ohio Cas. Ins. Co. v. Kentucky Natural Res. & Envtl. Prot. Cabinet*, 722 S.W.2d 290, 292 (Ky. Ct. App. 1986) ("In a judgment or injunction bond, the judgment against the principal is conclusive against the surety *if it is free of fraud and collusion*." (emphasis added; citation omitted)); *Old Republic Sur. Co. v. Reyes*, No. 05-01-01881-CV, 2002 WL 1772976, at *3 (Tex. Ct. App. Aug. 2, 2002) ("[A] surety may contest in litigation based on a claim on a judgment bond whether the principal's conduct violated a condition of the bond and whether the judgment was obtained by fraud or collusion." (citation omitted)).

[9]Where contractual language is plain, it must be applied without construction:

> "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." Syl. pt. 1, *Cotiga Development Company v. United Fuel Gas Company*, 147 W. Va. 484, 128 S.E.2d 626 ([1962]).

Syl. pt. 1, *Sally–Mike Props. v. Yokum*, 175 W. Va. 296, 332 S.E.2d 597 (1985).  In other words, "[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).

15

Virginia Mortgage Lender, Broker, and Servicer Act. *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d at 214 (internal quotations and citation omitted).

In addition, we find the Hartford bond language to be similar to the statutory language that applied to the bond that was described as a judgment bond in *State v. Myers* 74 W. Va. 488, 82 S.E. 270. The bond in *Myers* was required by the West Virginia Code of 1913, sec. 1144 (ch. 32, para. 28), which stated, in relevant part, that

> No county or license court nor town council shall authorize the issuing of any license to sell spirituous liquors . . . until the applicant shall have given bond with good security . . . in the penalty of at least [$3,500], conditioned that he will not permit any person to drink to intoxication on any premises under the control of such applicant; and will not knowingly sell or furnish any intoxicating drink to any person who is intoxicated at the time, or who is known to him to have the habit of drinking to intoxication, or whom he knows, or has reason to believe, is under the age of twenty-one years, and that he will not sell or furnish such drink to any person on Sunday; and with the further condition, that he will pay all such damages and costs as may be recovered against him by any person under any of the provisions of chapter thirty-two of the code of West Virginia, as amended. And such applicant and his securities in said bond shall be liable, in a suit or suits thereon, for the fine and costs which may be recovered against him for any offence under this chapter which is a violation of any of the conditions of said bond, as well as for the damages hereinbefore provided for, until the penalty of such bond is exhausted.

Much like the Hartford bonds, the statute requiring the bond at issue in *Myers* stated that the bond would be conditioned upon the principal's compliance with the statutory provisions relating to the sale of intoxicating drink, which included the condition that the principal

16

would pay "all such damages and costs *as may be recovered against him* by any person under any of the provisions" of the referenced code. Also similar to the Hartford bonds, the statute goes on to require that "such applicant and his securities in said bond shall be liable, in a suit or suits thereon, for the fine and costs which may be recovered against him for any offence under this chapter which is a violation of any of the conditions of said bond[.]" As will be discussed in more detail below, the *Myers* Court observed that the surety on a judgment bond is bound by a judgment against its principal. Thus, by treating the bond at issue in that case as a judgment bond, the *Myers* Court clearly did not consider the foregoing language holding the principal and his surety liable "in a suit or suits" for damages that may be recovered against the principal as making the bond anything other than a judgment bond.[10]

Furthermore, we note that other courts interpreting similar language have reached the same result. For example, the Supreme Court of Texas addressed the question of whether a particular bond was a general undertaking bond or a judgment bond in *Howze v. Surety Corp. of America*, 584 S.W.2d 263 (Tex. 1979). The *Howze* court determined that the bond was a judgment bond in which the surety agreed "to be liable for a judgment against the principal." *Howze*, 584 S.W.2d at 265. The bond at issue in *Howze* stated: "'[the principal and surety are] firmly bound unto THE STATE OF TEXAS in the sum of *$25,000.00* dollars payable at Austin, Travis County, Texas for the use by a consumer, the

_____

[10]*Compare* note 8, *supra*.

State, or any political subdivision thereof *who establishes liability against a dealer for damages, penalties, or expenses . . . .'" Id.* (latter emphasis added). In concluding that this language created a judgment bond, the *Howze* court reasoned that

> [t]he Act and bond both state specifically that the surety is not liable until the State, political subdivision or consumer *establishes liability*. It is implicit that one establishes liability by obtaining a judgment in a court of competent jurisdiction. A consumer can only make a claim upon the surety when he has obtained a judgment against the principal, or when he sues them together in the same suit. These bonds are, therefore, *judgment* bonds; and the surety is bound despite the fact that it was neither notified nor joined as a party.

*Id.* (footnote omitted). *See also Axess Int'l, Ltd. v. Intercargo Ins. Co.*, 183 F.3d 935, 940 (1999) (finding bond was judgment bond based on language stating that "the condition of this obligation is that the penalty amount of this bond [$50,000] shall be available to pay *any judgment for damages* against the Principal arising from the Principal's transportation related activities" (internal quotations omitted)).

Having found that the Hartford bonds are judgment bonds,[11] we find no error

---

[11]Hartford also has argued that the Commissioner of Banking had no authority to require a judgment bond insofar as a judgment bond ignores a surety's rights under W. Va. Code § 45-1-3 (1923) (Repl. Vol. 2010) to notice of a proceeding before a judgment arising therefrom is binding on said surety, or, in the absence of such notice, an opportunity to present defenses its surety would have had. We find this argument to be without merit. The statute directing the Commissioner of Banking to prepare a bond form to be used by mortgage lender and mortgage broker license applicants simply states that the "[a]pplication for a lender's or broker's license shall each year be submitted in writing under oath, *in the form prescribed by the commissioner . . . .*" W. Va. Code § 31-17-4(a) (2002) (Repl. Vol.
(continued...)

in the findings of the circuit courts of Jackson and Kanawha Counties reaching the same conclusion.

## B. Right to Assert Defenses

Hartford additionally submits that, because it did not receive notice of the actions against its principals, the circuit courts further erred in concluding that it was automatically responsible for paying the default judgments rendered against said principals. Hartford contends that, in the absence of notice, the default judgments are not binding against it and that it is entitled to present any defense that would have been available to its principals pursuant to W. Va. Code § 45-1-3 (1923) (Repl. Vol. 2010). Hartford acknowledges that the case of *State v. Myers*, 74 W. Va. 488, 82 S.E. 270, created an exception to W. Va. Code § 45-1-3. Nevertheless, Hartford argues that *Myers* created a narrow exception that should be applied only where the surety *explicitly* grants the right to recover against the bond

[11](...continued)
2003) (emphasis added).  *Accord* W. Va. Code § 31-17-4(e)(3) (2010) (Supp. 2012) (requiring mortgage lender license applicant to "file with the commissioner a bond . . . *in a form and with conditions as the commissioner may prescribe*" (emphasis added)); W. Va. Code § 31-17-4(f)(3) (2010) (Supp. 2012) (applying same requirement to mortgage broker license applicant).  The foregoing statutes specifying that the Banking Commissioner prepare a bond form places no limitations on the Commissioner's authority to prescribe the terms applicable to said bonds, and are more specific to the Commissioner's authority than W. Va. Code § 45-1-3.  *See* Syl. pt. *6, Carvey v. West Virginia State Bd. of Educ.*, 206 W. Va. 720, 527 S.E.2d 831 (1999) ("The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." (internal quotations and citations omitted)).  For further treatment of W. Va. § 45-1-3, see Section III. B., *infra*.

immediately upon a judgment against the principal.

Respondents argue that the circuit courts properly declined to apply W. Va. Code § 45-1-3, which is a general statute governing sureties, guarantors, indorsers, and others who may be secondarily liable for a debt. Respondents assert that the circuit courts were correct in concluding that they had satisfied the condition of the bond by obtaining default judgments against Hartford and, therefore, that they were entitled to judgment against Hartford. Respondents rely on *State v. Myers* for the proposition that the protections of W. Va. Code § 45-1-3 do not apply to judgment bonds. According to Respondents, obtaining a judgment in the absence of fraud or collusion is the only requirement for collecting on a judgment bond.

Our analysis of this issue is simplified by the fact that we have identified the Hartford bonds as judgment bonds. Thus, the issue for our resolution is whether the surety on a judgment bond who does not receive notice of an action prior to the entry of a default judgment against its principal is obligated to pay the judgment without the opportunity to present defenses that would have been available to its principal.

The statute upon which Hartford bases its claim of entitlement to present defenses that would have been available to its principals is W. Va. Code § 45-1-3, which states:

Whether the surety, guarantor or indorser (or his committee or personal representative) shall have given notice as provided in the first section of this article or not, no judgment, decree or recovery rendered, entered, or had in any suit, action, prosecution or proceeding, to which the surety, guarantor or indorser (or his committee or personal representative) was not a party regularly served with process, shall be in any wise binding on such surety, guarantor or indorser (or his committee or personal representative), and, notwithstanding such decree, judgment or recovery, the surety, guarantor or indorser (or his committee or personal representative) shall be allowed to make any such defense in any action, suit or proceeding instituted against him, as could have been made in the suit in which such decree, judgment or recovery was had.

As Hartford has acknowledged, this Court recognized an exception to W. Va. Code § 45-1-3 in *State v. Myers*, 74 W. Va. 488, 82 S.E. 270. The *Myers* Court interpreted an earlier version of W. Va. Code § 45-1-3 that also contained the language requiring notice to a surety before it could be bound by a judgment, and further allowing a surety who had not received notice to assert any defense that could have been made in the suit that resulted in the judgment.[12] Based upon its analysis of that statute, the *Myers* Court concluded that the Legislature had not intended the statute to apply to judgment bonds. In this regard, the Court stated that,

[p]rior to this statute, the surety on a bond, conditioned to pay any judgment that might be recovered against his principal, was bound by the judgment when so recovered. The judgment against the principal bound the surety, in the absence of fraud,

---

[12]*See* Chapter 37, Acts 1907. *See also State v. Myers,* 74 W. Va. 488, 490-91, 82 S.E. 270, 271 (quoting Chapter 37, Acts 1907).

21

and determined his liability. *State v. Nutter*, 44 W. Va. 385[, 30 S. E. 67 (1898)], and *State*[*, to Use of Beard*] *v. Abbott*, 63 W. Va. 189[, 61 S. E. 369 (1907)]. We think this is still the law.

*Myers*, 74 W. Va. at 491, 82 S.E. at 271. Thus, under the *Myers* decision, judgment bonds are not subject to W. Va. Code § 45-1-3. If the West Virginia Legislature had disagreed with the opinion, it could have amended the statute to plainly include judgment bonds. The Legislature has made no such amendment. Therefore, the traditional rule stands:

> A judgment against a principal does not bind the surety conclusively, as a general rule, but it is *prima facie* evidence of liability and its extent. *If, however, the instrument binds its makers to abide the result of certain litigation, or to satisfy any judgment therein, or to indemnify against it, a judgment against the principal is conclusive upon the sureties, so that they cannot contest the liability, in the absence of fraud or collusion.*

Syl. pt. 4, *State v. Nutter*, 44 W. Va. 385, 30 S.E. 67 (1898) (second emphasis added). In adopting this rule, the *Nutter* Court explained that if a bond "undertakes to pay such judgment as may be recovered, that judgment is conclusive, because that judgment is the event on the happening of which the surety agrees to pay." 44 W. Va. at 389, 30 S.E. at 69. *See also State, to Use of Beard v. Abbott*, 63 W. Va. 189, 193, 61 S.E. 369, 371 (1907) ("This bond not only covenants for faithful discharge of duties according to the decree, but it contains the additional covenant that the receiver should pay over all moneys that might come to his hands by virtue of the decree as the court shall direct. It contains both covenants. . . . [T]he authorities are overwhelming, and almost without exception, that upon such a bond as we have in hand the judgment is conclusive.").

The foregoing cases are dissimilar from the instant actions insofar as none of them have involved a default judgment. Thus, we must also decide whether the general rule that sureties on judgment bonds are bound by judgments rendered against their principals is applicable to default judgments. While the question is novel for this Court, it has been resolved in other jurisdictions that have concluded that the rule does apply to default judgments. *See Axess Int'l, Ltd. v. Intercargo Ins. Co.*, 183 F.3d at 940 ("Generally, a default judgment obtained by an obligee against a principal obligor does not have preclusive effect in a subsequent action against a secondary obligor. *See* Restatement (Third) of Suretyship and Guaranty § 67(3). Where a judgment bond is involved, however, such as the one at issue here, a different rule applies: 'Where the very condition of the bond is the performance of a judgment against the principal, or that the surety will pay all damages that may be awarded in an action brought against the principal, . . . there is no question as to the conclusiveness, as against the surety, of a judgment against the principal, if binding upon the latter and free from fraud and collusion, assuming, of course, that it is the kind of judgment contemplated by the surety's undertaking.' 74 Am. Jur. 2d *Suretyship* § 153 (1974)." (footnote omitted)); *Sargeant v. Starr*, 102 Ga. App. 453, 459, 116 S.E.2d 633, 637 (1960) ("It is well settled, beginning with *Jackson v. Guilmartin*, 61 Ga. 544 [(1878)], that the surety is bound by the judgment entered against the principal on the bond. And this is so where the judgment rendered was with the consent of the principal. . . . Such a bail or security takes the fortunes of his principal, and is bound equally with him by the judgment in the main action. . . . The bail can no more go behind the judgment, or attack it, by affidavit of illegality, after it is duly

23

entered up against both, than can the principal." (internal quotations and citations omitted)); *Martiniello v. Robitaille*, 293 Mass. 200, 202, 199 N.E. 534, 535 (1936) ("The judgment in the original action against the principals on the bond, *though obtained by default*, being 'the final judgment in said action,' . . . and having been entered in the lawful exercise of the power of the court, . . . *was conclusive on the sureties*, by reason of their contract with the plaintiffs." (emphasis added)); *R & L Lumber Co. v. Summit Fid. & Sur. Co.*, 284 Minn. 489, 494, 170 N.W.2d 594, 598 (1969) ("It is clear, however, that where a surety has undertaken to pay 'any judgment rendered' in an action, the surety has neither a right to notice of such an action or a right to reopen a judgment entered against its principal, even though it was obtained by consent or default."); *Valencich v. TMT Homes of Oregon, Inc.*, 193 Or. App. 47, 55, 88 P.3d 300, 303 (2004) (holding surety liable for default judgment against principal obtained in an action in which the surety was neither named as a party nor served, and commenting that "Oregon endorses the traditional rule followed by a majority of jurisdictions, discussion of which is found in *Suretyship*, 74 Am. Jur. 2d 115–16, §§ 129, 130 (2001): 'Generally, where the liability of a surety is dependent on the outcome of litigation in which his principal is involved, a judgment against the principal is binding and conclusive on the surety, who may not interpose defenses which should have been set up in the action in which the judgment was recovered. When the obligation of the principal has been determined, the extent of the liability on the bond becomes fixed; the sureties on the bond are not entitled to relitigate, separately, the question of the principal's obligation, at least in the absence of a charge of fraud or collusion.'"); *Ward v. Federal Ins. Co.*, 233 S.C. 561,

24

564-65, 106 S.E.2d 169, 170 (1958) (finding default judgment conclusive against surety and observing that, "'[a]s a general rule, in all cases where the liability of a surety is dependent on the outcome of litigation in which his principal is or may be involved, a judgment against the principal is binding and conclusive on the surety, and the surety may not interpose defenses which should or might have been set up in the action in which the judgment was recovered, or require proof of the facts on which the judgment rests, or attack the validity of the judgment, except for fraud or collusion or want of jurisdiction. The rule is applicable even though the surety had no notice of the suit or opportunity to defend[.]'" (quoting 72 C.J.S. *Principal and Surety* § 261 at 706)); *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d at 214 ("Whether a default judgment is conclusive of the surety's liability or only prima facie evidence depends on what type of bond is at issue. . . . [I]f the bond is a judgment bond, the Texas Supreme Court has held that a surety is bound by the default judgment against the principal even if the surety did not have notice of the prior suit against the principal absent proof of collusion or fraud." (footnote omitted)).

With regard to the fairness of the rule, the Supreme Court of Minnesota has observed that

> [t]his rule is not unfair to the surety. Assuming a surety pays a judgment pursuant to its bond under a contract to pay any judgment upon default by its principal, it is subrogated to whatever rights the judgment creditor had against its principal. *Carr Hdwe. Co. v. Chicago Bonding & Surety Co.*, 190 Iowa 1320, 181 N.W. 680 [(1921)]; *Western Cas. & Surety Co. v. Meyer*, 301 Ky. 487, 192 S.W.2d 388, 164 A.L.R. 769 [(1946)].

25

*See, Anchor Cas. Co. v. Bird Island Produce, Inc.*, 249 Minn. 137, 82 N.W.2d 48 [(1957)]; *Hartford Acc. & Ind. Co. v. Dahl*, 202 Minn. 410, 278 N.W. 591 [(1938)]. Consequently, the surety, upon payment of the judgment, may seek reimbursement from its principal. It is only equitable that the surety which has contracted to pay any judgment, rather than the judgment creditor who relied on the bond, should be burdened with the expense and risk of such an action.

To protect itself against an insolvent principal, a surety can and usually does require the principal to post collateral up to the full amount of the bond. In this case, defendant took [its principal's] stock as collateral. Obviously this was not a prudent choice in view of the fact that [its principal] is now insolvent and the stock is quite likely worthless. It is not because of any act of plaintiff that defendant is not fully protected and finds itself in no better position than a general creditor of [its principal] on its subrogation claim. Had defendant required [its principal] to post sufficient collateral, its effort to intervene in [its principal's] dispute with plaintiff would have been unnecessary.

*R & L Lumber Co. v. Summit Fid. & Sur. Co.*, 284 Minn. at 495-96, 170 N.W.2d at 598-99.

Based upon the foregoing discussion, we now expressly hold that the surety on a judgment bond is conclusively bound by a default judgment entered against its principal, even when the surety did not have notice of the prior suit against the principal, so long as the judgment is the type of judgment contemplated by the bond and the surety cannot establish collusion or fraud.

Applying this holding to the instant consolidated cases, we conclude that Hartford, as surety on the two judgment bonds at issue, is conclusively bound by the default

26

judgments entered against its principals. Accordingly, the circuit courts in both of these cases properly granted summary judgment in favor of the respective plaintiffs as to this issue.

### C. Credit for Settlements

As an additional issue in only the case involving the Rhodes/Cochran plaintiffs, Appeal Number 12-0522, Hartford assigns error to the circuit court's refusal to grant Hartford a credit equal to the amount of settlements that plaintiffs received from other defendants.

In this regard, Hartford argues that the circuit court erred in holding that a surety and its principal are not entitled to a setoff or credit against a judgment rendered against the principal despite the fact that the plaintiffs have already received one full recovery for their alleged injury. Hartford notes that the plaintiffs are entitled to only one satisfaction for their alleged injury. As a result of the settlement agreement with other defendants named in the action below, Rhodes/Cochran's loan was voided, the deed of trust on the property was released, and the trade line for the account was deleted for the purposes of reporting to credit bureaus. Thus, Hartford contends that if the plaintiffs obtain an additional recovery of $50,000 from Hartford, they will receive a windfall.

Respondents argue that Syllabus point 7 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990), makes

27

clear that, in order to obtain a credit, a settlement must be entered prior to the judgment:

> Defendants in a civil action against whom a verdict is rendered are entitled to have the verdict reduced by the amount of any good faith settlements *previously made* with the plaintiff by other jointly liable parties. Those defendants against whom the verdict is rendered are jointly and severally liable to the plaintiff for payment of the remainder of the verdict. Where the relative fault of the nonsettling defendants has been determined, they may seek contribution among themselves after judgment if forced to pay more than their allocated share of the verdict.

(emphasis added). Respondents Rhodes/Cochran note that they settled with some of the remaining defendants nearly two years *after* the default judgment was entered against Hartford's principal, Equity South.

This issue is easily resolved. We have explained earlier in this opinion that, because the bond issued by Hartford to Equity South is a judgment bond, the judgment against Hartford's principal, Equity South, is binding on Hartford. In this regard, Hartford is not entitled to re-litigate defenses available to its principal. Similarly, Hartford would not be entitled to any credit that was not available to its principal in connection with the default judgment. In the instant case, the default judgment against Equity South, Hartford's principal, was entered on October 14, 2008. Rhodes/Cochran entered into a formal settlement agreement with Nationstar and the Bank of New York, two of the remaining defendants in the case, on August 4, 2010. Clearly then, at the time of the default judgment against Equity South, there was no settlement in existence upon which to base a credit. Consequently, Hartford is entitled to no credit for the settlement that was executed almost

28

two years *after* the default judgment. This result is in accordance with Syllabus point 7 of the *Zando* opinion, which is quoted above and grants a credit for "good faith settlements *previously made.*" *Board of Ed. of McDowell Cnty. v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (emphasis added). It is also in accordance with Syllabus point 5 of *Zando*, which states:

> "'Where a payment *is made*, and *release obtained*, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong.' Point 2, Syllabus, *Hardin v. The New York Central Railroad Company*, 145 W. Va. 676[, 116 S.E.2d 697 (1960)]." Syllabus Point 1, *Tennant v. Craig*, 156 W. Va. 632, 195 S.E.2d 727 (1973).

182 W. Va. 597, 390 S.E.2d 796 (emphasis added). Simply put, no credit can be given for a settlement that is not yet in existence.

To the extent that Hartford complains that failing to grant it credit for the settlement violates the one recovery rule,[13] we note the circuit court's finding that "the settlement was reached over [nineteen] months after the default judgment was entered against Equity. The amount of the settlement was influenced, at least in part, by the existence of the default judgment." We find nothing to contradict this conclusion.

---

[13]*See* Syl. pt. 3, *State Farm Mut. Auto. Ins. Co. v. Schatken*, 230 W. Va. 201, 737 S.E.2d 229 (2012) ("'It is generally recognized that there can be only one recovery of damages for one wrong or injury. Double recovery of damages is not permitted; the law does not permit a double satisfaction for a single injury.' Syl. Pt. 7, in part, *Harless v. First Nat'l Bank in Fairmont*, 169 W. Va. 673, 289 S.E.2d 692 (1982).").

For the reasons set out above, we find the circuit court did not err in failing to grant Hartford, as surety, credit for a settlement that was not executed until nineteen months after entry of the default judgment against Hartford's principal.


## IV.

## CONCLUSION

Based upon the rationale set out in this opinion, in Appeal Number 12-0037, we conclude that the Circuit Court of Jackson County did not err in granting summary judgment in favor of the Curtises in their action against Hartford. Accordingly, the circuit court's order of December 5, 2011, is affirmed. Likewise, in Appeal Number 12-0522, the Circuit Court of Kanawha County did not err in granting summary judgment in favor of Rhodes/Cochran in their action against Hartford. Consequently, the March 27, 2012, order of the circuit court is affirmed.

Appeal No. 12-0037, Affirmed.

Appeal Number 12-0522, Affirmed.

30