David Lawrence **FEDERER**, as Executor of The Estate of Christina Audrey Federer, Plaintiff-Appellant,

v.

**ZURICH AMERICAN INSURANCE CO.**, Fidelity and Deposit Company of Maryland, Defendants-Appellees.

No. 16-16592
Non-Argument Calendar

United States Court of Appeals, Eleventh Circuit.

(July 11, 2017)

Robert Matthew Reeves, Elizabeth L. Clack-Freeman, Melody Allen Glouton, Andersen Tate & Carr, PC, Duluth, GA, for Plaintiff-Appellant

Philip Keith Lichtman, Zechariah David Anderson, Mills Paskert Divers, Atlanta, GA, for Defendants-Appellees

Before TJOFLAT, WILLIAM PRYOR, and ANDERSON, Circuit Judges.

PER CURIAM:

Christina Audrey Federer ("Federer") filed suit in Georgia state court against American Mortgage Express Corp. ("AMEC") for violations of the Georgia Residential Mortgage Act ("GRMA"). When AMEC—which had been out of business for several years—failed to respond, the Georgia court entered a default judgment and awarded substantial damages. Shortly thereafter Federer passed away and plaintiff-appellant David Lawrence Federer, as executor of her estate (the "Estate"), brought suit to recover the default judgment award from AMEC's surety, defendant-appellee Fidelity and Deposit Co. of Maryland, and its parent company, defendant-appellee Zurich American Insurance Co. (collectively, "Appellees"). After removal to the Northern District of Georgia, the district court determined that the state-court action resulting in default judgment was barred by res judicata and granted Appellees' motion for summary judgment. Because Appellees were entitled to challenge the entry of default judgment and because, under

Georgia law, the state-court action should have been barred by res judicata, we affirm that decision.

## I. Background

Pursuant to licensing requirements established by the GRMA, see O.C.G.A. § 7-1-1000 et seq., mortgage lenders wishing to do business in Georgia must provide the state's Department of Banking and Finance with a $150,000 bond. See O.C.G.A. § 7-1-1003.2(b). In 2005, AMEC (as principal) and Appellees (as surety) filed the requisite bond (the "Bond"), and, shortly thereafter, AMEC originated a mortgage loan on behalf of Federer. However, by early 2008, AMEC had ceased operations and the Bond had been cancelled.

In 2012, Federer filed a lawsuit in the Northern District of Georgia against several banks—although not against Appellees or AMEC—alleging improprieties in the issuance of her loan. Many of the defendants in that lawsuit filed, and had granted, motions to dismiss based on the applicable statute of limitations. The court then ordered Federer to show cause why her case should not be dismissed in its entirety. When she did not respond, the court dismissed the case and entered judgment against her.

Less than six weeks after the federal court dismissed her first lawsuit, Federer filed a second action in the Superior Court of Gwinnett County, Georgia. This second lawsuit, which now included AMEC as a defendant, again alleged improprieties in the issuance of her loan. With the exception of AMEC—which had been out of business for several years at that point—all of the defendants filed, and had granted, motions to dismiss the action as barred by res judicata. However, because AMEC did not respond to the complaint, the court granted Federer's motion for default judgment and awarded $332,000 in damages.

Following her death, Federer's counsel sent a letter to Appellees, as AMEC's surety, seeking payment under the Bond based on the default judgment award. Appellees declined and the Estate filed suit to recover in Georgia state court. Appellees removed the case to federal court where, on cross-motions for summary judgment, the Northern District of Georgia determined that Federer's state-court action against AMEC should have been barred by res judicata. Accordingly, the district court granted Appellees' motion for summary judgment, denied the Estate's motion for summary judgment, and dismissed the case. This appeal followed.

## II. Discussion

On appeal, the Estate first argues that Appellees are conclusively bound by the state-court default judgment against AMEC and, even having no notice of the underlying action, are not permitted to attack it. Second, assuming that the state-court judgment is not conclusively binding, but is merely prima facie evidence of liability, the Estate argues that Appellees failed to adequately rebut the presumption that such judgment was correct. We discuss each in turn.

### A. Effect of the State-Court Judgment

■ Generally, Georgia courts have observed that "since the first volume of our Supreme Court reports, it has been the rule that a person liable as a surety is not conclusively bound by a judgment against his principal, the judgment being only prima facie evidence of the principal's liability to the creditor." Escambia Chem. Corp. v. Rocker, 124 Ga. App. 434, 438–39, 184 S.E.2d 31, 35 (1971). Under this rule, a "surety may introduce evidence seeking to meet his burden of rebutting the prima facie case against him ... [but] if [he] fails to carry his burden of introducing evidence

sufficient to rebut the correctness of the judgment against the principal, a directed verdict against the surety for the amount of the judgment is demanded." Id. at 439, 184 S.E.2d at 35 (citing Bishop v. Pinson, 33 Ga. App. 269, 125 S.E. 880 (1924)).

However, Georgia courts recognize a distinction, which is salient here, between the treatment of "performance bonds" and the treatment of "judgment bonds." See id. at 438 n.1, 184 S.E.2d at 35 n.1 (distinguishing between a performance bond—which was at issue in the case—and a bond "conditioned to pay the judgment"—which was not). A performance bond is one that obligates the surety to act only on the failure of the principal to perform as promised in the agreement. See Black's Law Dictionary 1319 (Deluxe Tenth Edition 2014) (defining performance bond as "[a] bond given by a surety to ensure the timely performance of a contract"); see also Lingo v. Hartford Fire Ins. Co., No. 4:10CV84MLM, 2010 WL 1837718, at *3 (E.D. Mo. May 4, 2010) ("The bonds at issue are not judgment bonds, but rather performance bonds as they are conditioned upon the bond principal, failing to 'faithfully conform to and abide by the provisions' of the Missouri Residential Mortgage Brokers License Act ('RMBLA') and 'honestly and faithfully appl[ying] all funds received and perform[ing] all obligations and undertakings' as required by the RMBLA." (second alteration in original)). Conversely, a judgment bond is one in which the surety agrees to be liable for a judgment based on a specific violation covered by the bond. See, e.g., Hartford Fire Ins. Co. v. Curtis, 231 W. Va. 596, 603, 748 S.E.2d 662, 669 (2013); Ohio Cas. Ins. Co. v. Ky. Nat. Res. & Envtl. Prot. Cabinet, 722 S.W.2d 290, 292 (Ky. Ct. App. 1986) (explaining that a judgment bond is a bond in which "the surety is obligating itself to pay a particular judgment rendered against a principal, even though the surety had no notice, so

long as the judgment is one within the purview of the agreement between surety and principal").

This distinction is relevant because a judgment against the principal of a performance bond is merely prima facie evidence of a surety's liability. Accordingly, "the surety may introduce evidence seeking to meet his burden of rebutting the prima facie case against him." Escambia, 124 Ga. App. at 439, 184 S.E.2d at 35. Conversely, "[judgment] bonds ... are conditioned to pay the judgment, which makes the judgment conclusive in the absence of fraud, collusion, etc." Id. at 438 n.1, 184 S.E.2d at 35 n.1. Thus, in the current case, Appellees are entitled to rebut the presumption of liability that arises from the judgment against AMEC if the Bond is a performance bond, but not if it is a judgment bond.

We have no trouble concluding that the Bond is a performance bond. The relevant language provides:

> NOW, THEREFORE, the condition of the foregoing obligation is such that if [AMEC] shall comply with the provisions of said Georgia Residential Mortgage Act, all regulations duly promulgated thereunder, and all other laws applicable to the conduct of its business, and shall pay any and all monies that may become due and owing to the State of Georgia which shall include, but not be limited to monies owed for fees, fines or penalties under and by virtue of the provisions of the GRMA or the rules of the Department of Banking and Finance, and shall pay any and all monies that may become due and owing any person due to the violation of any such laws and regulations by the principal through its own acts or the acts of any agent of the principal, then this obligation will be void; other-

wise the same will remain in full force and effect.

Thus, if AMEC performs its responsibilities, the Bond is void; if it does not, Appellees are called to action. This is the hallmark of a performance bond. Indeed, the Bond clearly provides that even if a judgment were entered, it is AMEC—and not Appellees—who are obligated in the first instance to pay it.

Under Georgia law, parties are certainly free to enter into judgment bonds. As the state courts have recognized, "[o]f course the parties are free to contract as they will, and if it is provided that payment of a judgment obtained against the debtor by the creditor is guaranteed, or is specified that the judgment shall be conclusive of the liability of the guarantor, the contract will be given effect as written." Id. (emphasis added). However, absent some indication that the parties intended to enter into a judgment bond—or that the GRMA so required[1]—neither the Georgia courts nor this Court applying their law will infer such an intent.

The differences between this Bond and the bonds in those cases the Estate suggests "provide insight" are striking. Most notably, the bond in Curtis—although containing language similar to the Bond at issue here—also expressly provided:

If any person shall be aggrieved by the misconduct of the principal, he may upon recovering judgement [sic] against such principal issue execution of such judgement [sic] and maintain an action upon the bond of the principal in any court having jurisdiction of the amount claimed, provided the Commissioner of Banking assents thereto.

Curtis, 231 W. Va. at 603, 748 S.E.2d at 669. The bonds in the other cases to which the Estate cites have similar provisions. See Axess Intern., Ltd. v. Intercargo Ins. Co., 183 F.3d 935, 940 (9th Cir. 1999) ("The bond at issue here states that 'the condition of this obligation is that the penalty amount of this bond [$50,000] shall be available to pay any judgment for damages against the Principal arising from the Principal's transportation related activities.'" (alteration and emphasis in original)); Mass. Bonding & Ins. Co. v. Cent. Fin. Corp., 124 Colo. 379, 383–84, 237 P.2d 1079, 1081 (1951) (discussing a bond which stipulated that the surety "shall pay all judgments and costs adjudged against said principal"); S. Ins. Co. v. ADESA Austin, 239 S.W.3d 423, 427 (Tex. App. 2007) (judgment bond created by statute). Thus, unlike the cases identified by the Estate as enforcing a judgment bond, here there is an absence of language in both the Bond and the GRMA indicating an intent to establish liability based solely on an adverse judgment.

Accordingly, because their suretyship was governed by a performance bond, Appellees were faced with, at worst,[2] a rebut-

1. Despite the Estate's arguments to the contrary, we simply see no indication that the GRMA requires a judgment bond rather than a performance bond.

2. We note that some authorities would not even saddle Appellees with a rebuttable presumption where a default judgment was obtained on a performance bond. See Restatement (Third) of Suretyship and Guaranty § 67(3) (1996) ("When, in an action by the obligee against the principal obligor to enforce the underlying obligation, a judgment in

favor of the obligee is obtained by default, confession, stipulation, or the like, the judgment against the principal obligor is evidence only of its rendition in a subsequent action of the obligee against the secondary obligor to enforce the secondary obligation."). The Escambia court held that the then-current version of Georgia's Civil Practice Act—providing that a default resulted in a judgment "as if every item and paragraph of the petition were supported by proper evidence"—was contrary to the Restatement's position. Escambia, 124

table presumption of liability in the district court. As the Georgia courts have held, they were therefore entitled to

> introduce evidence seeking to meet [the] burden of rebutting the prima facie case against [them], as, for example, by showing that . . . the principal . . . was not in fact liable for damages assessed against him by a prior judgment or by negativing the liability of an administrator, against whom judgment had been rendered, by showing payment, set-off, etc.

Escambia, 124 Ga. App. at 439, 184 S.E.2d at 35 (citation omitted).[3] Having found that they were free to rebut the presumption of liability, we turn to our discussion of whether Appellees met that burden.

### B. Res Judicata

■ The district court here found that the claims against AMEC in the Georgia state-court action were barred by res judicata based on the first federal court action.

The parties have consistently argued—both at the trial court and on appeal—that Georgia res judicata law controls this analysis.[4] Under Georgia law, "there are three requirements which must be satisfied in order for res judicata to apply: there must be identity of the cause of action, identity of the parties or their privies, and previous adjudication on the merits by a court of competent jurisdiction." Bostick v. CMM Props., 297 Ga. 55, 57, 772 S.E.2d 671, 673 (2015). Additionally, "[i]t is axiomatic that the party against whom the doctrine of res judicata is raised as a bar to the subsequent suit must have had a full and fair opportunity to litigate the issues in the first action." Id. Of these core requirements, the Estate only meaningfully contests the district court's finding that AMEC was in privity with the defendants to the first federal lawsuit.

A subsequent suit will only be barred by res judicata if it is between the same par-

---

Ga. App. at 440, 184 S.E.2d at 35–36. That statutory language has been carried forward to Georgia's current Civil Practice Act, see O.C.G.A. § 9-11-55(a), and we assume without deciding that Georgia still does not recognize the Restatement's view.

**3.** For this reason, the Estate's argument that Appellees were not entitled to "collaterally attack" the state-court judgment is wholly without merit. Georgia courts have held that a surety can attack the underlying judgment by showing that the principal was not, in fact, liable or by "negativing" the liability of an administrator. Those actions would clearly be collateral attacks on the underlying judgment.

**4.** We find it worthwhile to note that, when a district court is called on to determine the preclusive effect that a state court should have given to a prior determination of a federal court on a federal question, federal preclusion law should ordinarily govern. See Seven Elves, Inc. v. Eskenazi, 704 F.2d 241, 243 n.2 (5th Cir. 1983) ("[S]tate courts generally are required to follow federal rules in deciding the preclusive effect of a prior federal question judgment of a federal court."); Dalbon v. Women's Specialty Retailing Grp., 674 So.2d 799, 801 (Fla. Dist. Ct. App. 1996) ("Because

this case involves a prior federal court judgment, we apply federal claim preclusion principles." (citing Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498 (11th Cir. 1990))); see also Restatement (Second) of Judgments § 87 (1982) ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."); 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4468, at 63 n.31 (2002) ("As to federal-question decisions, federal law controls."); cf. CSX Transp., Inc. v. Bhd. of Maint. of Way Emps., 327 F.3d 1309, 1316 (11th Cir. 2003) ("Given that the matter before us is a federal question previously decided by a federal court, it naturally follows that federal preclusion principles apply in this case."). Because the district court here applied Georgia preclusion law and neither party has challenged that decision on appeal, any objections to that decision are waived. Accordingly, we need not, and expressly do not, decide whether federal preclusion law should have controlled and what effect, if any, such a determination would have had on the ultimate outcome.

ties—or their privies—as the first suit. See, e.g., McIver v. Jones, 209 Ga. App. 670, 672, 434 S.E.2d 504, 506 (1993). When the liability of a defendant who was not a party to the first suit "is predicated on the same misconduct which was the subject of the original suit," or when that defendant is "accused of . . . complicity with the original defendant," Georgia courts have indicated that the parties are in privity. Id. (quoting Caswell v. Caswell, 162 Ga. App. 72, 72, 290 S.E.2d 171, 172 (1982) ("Although three new defendants have been added in this action, their alleged liability is predicated on the same operative facts and acts of misconduct which were the subject of the original suit. What they are accused of, in effect, is complicity with the original defendants.")). Likewise, "[c]o-conspirators are considered to be in privity for purposes of res judicata." Id.

Although both the first federal court complaint and the state court complaint allege "collusion" between the various defendants, we need not decide whether AMEC was alleged to be a co-conspirator. It is sufficient to say that, at a minimum, "their alleged liability [wa]s predicated on the same operative facts and acts of misconduct which were the subject of the original suit." Caswell, 162 Ga. App. at 72, 290 S.E.2d at 172. In dismissing Federer's claims against another defendant for res judicata, the state court recognized that both the federal and state lawsuits were "based on the same allegations of misconduct in connection with the origination of her loan and the 2010 Foreclosure Notice." And according to Federer's complaint in the state court action, AMEC "was the putative lender in the subject loan transaction." Thus both actions were based on allegations of misconduct arising from a loan transaction for which AMEC was the

lender. Against that backdrop, we have no trouble concluding that AMEC's "alleged liability [wa]s predicated on the same operative facts and acts of misconduct which were the subject of the original suit." Id. Accordingly, the district court properly concluded that Federer's action against AMEC should have been barred by res judicata.[5]

## III. Conclusion

Appellees, as sureties on a performance bond, were entitled to rebut the prima facie case of liability arising from the entry of default judgment against AMEC. Having properly afforded them an opportunity to do so, the district court correctly determined that, under Georgia law, the state-court action should have been barred by res judicata. Accordingly, the judgment of the district court is **AFFIRMED.**

---

5. Because we affirm the grant of summary judgment on res judicata grounds, we, like the district court, decline to reach the other defenses raised by Appellees.